DAVID H. SAWYER, Respondent, v ROBERT SICKINGER, Appellant.

First Department, April 15, 1975

*Charles Singer* of counsel *(Krause, Hirsch & Gross,* attorneys), for appellant.

*Joseph S. Siegel* of counsel *(Robert L. Lasky* with him on the brief; *Siegel Matson & Lasky,* attorneys), for respondent.

MURPHY, J. The instant action was instituted to (a) permanently restrain defendant from performing any act in derogation of plaintiff's alleged right to acquire defendant's motion picture and related rights in the novel "The Child Buyer",

written by the distinguished author John Hersey, (b) compel defendant to specifically perform his agreement granting plaintiff an exclusive option to acquire such rights, and (c) recover substantial money damages resulting from defendant's asserted breach of such agreement.

According to the complaint, defendant acquired the motion picture rights to the Hersey novel in November, 1967. Pursuant to said agreement, defendant was required (except under specified circumstances not here relevant) to direct the first motion picture based upon said novel. However, due to his inability to arrange necessary financing, defendant allegedly offered plaintiff an opportunity to acquire all of defendant's rights under his agreements with Hersey and to a screenplay written by another, based on such literary work.

The complaint then alleges that in or about December, 1972, the parties entered into the following agreement: "Upon plaintiff obtaining Hersey's waiver of the condition of The Child Buyer Agreements requiring defendant personally to direct the first motion picture based upon the Novel, and Hersey's agreement to permit plaintiff to direct the first motion picture based upon the Novel, defendant would grant plaintiff an exclusive option to acquire all of defendant's rights under the Child Buyer Agreements and all of defendant's rights in and to the Minoff Screenplay; the option price would be $2500.00; the option term would be one year; the option would be renewable for an additional term of one year upon the payment of additional consideration of $2500.00; upon plaintiff's exercise of the option, the purchase price for all of defendant's rights under the Child Buyer Agreements and in and to the Minoff Screenplay would be $62,500.00, less the consideration theretofore paid for the option, plus 1½% of the producer's share of the net profits derived from the distribution and exploitation of the first motion picture produced based upon the Novel; the defendant would be hired to serve as associate producer of the first motion picture produced based upon the Novel and his compensation for such services would be $5,000.00."

The complaint then concludes by asserting that plaintiff, in reliance on the above agreement, obtained Hersey's written waiver of the requirement that defendant direct the picture; but that defendant nevertheless refused to perform the agreement.

The answer denies all of the material allegations of the

complaint and asserts affirmative defenses, *inter alia,* predicated on the absence of a writing sufficient to memorialize the alleged contract since: it cannot be performed within one year (General Obligations Law, § 5-701, subd 1), involves the sale of personal property beyond $5,000 in amount (Uniform Commercial Code, § 1-206, subd [1]) and provides for an assignment of an interest in a copyright (US Code, tit 17, § 28.)

Relying on the above affirmative defenses, defendant then moved to dismiss the complaint and for summary judgment, Plaintiff opposed the motion on the grounds of estoppel and the sufficiency of certain writings to meet the requirements of the Statute of Frauds. Special Term found sufficient triable issues presented to defeat the motion. For the reasons hereinbelow set forth, we reach a contrary conclusion.

Preliminarily we note that, in reaching our determination, we find it unnecessary to decide the merits of defendant's second and third affirmative defenses (based on a failure to comply with the provisions of the Uniform Commercial Code [§ 1-206, subd (1)] and the applicability of Federal copyright law [US Code, tit 17, § 28]) or the actual authority of defendant's purported agent since, in our view, the defense predicated on the Statute of Frauds is sufficient to defeat plaintiff's claim.

Special Term held that the concededly oral agreement alleged by plaintiff would not come within the statute (General Obligations Law, § 5-701, subd 1) if it "included * * * only the option itself" rather than "the results of the option" because "such performance was possible within one year." Presumably the court was considering the possibility of plaintiff's exercising or failing to exercise the option within one year. The statute, however, would be applicable under either contingency.

If plaintiff exercised the option he would acquire defendant's right under the Hersey agreements "to produce and exhibit an unlimited number of both theatrical motion pictures and television motion pictures, forever and throughout the world", with the corresponding obligation of paying defendant, *inter alia,* 1½% of the producer's share of the net profits for the same period. Under similar facts, we held that "such continuing obligation to make payments to defendant makes this alleged agreement incapable of performance within one year". *(Kastner v Gover,* 19 AD2d 480, 482, affd 14 NY2d 821.)

On the other hand, while an election not to exercise an option may constitute a performance within the year, the statute does not become inapplicable where, as here, the plaintiff retains the sole power to make such determination. *(Kastner v Gover, supra.)* A different result would follow if the right to terminate the agreement within one year was exercisable by either party *(Blake v Voight,* 134 NY 69), or by the defendant alone *(North Shore Bottling Co. v Schmidt and Sons,* 22 NY2d 171) or by a third party *(Metro-Goldwyn-Mayer v Scheider,* 43 AD2d 922).

Since it is clear that the pleaded agreement falls within the ban of the Statute of Frauds, we turn now to plaintiff's contention that certain letters written by defendant's agent (assuming, for such purpose, proper authorization) satisfy the requirements of the statute. These letters, addressed to respondent's attorney, read as follows:

"May 10, 1973
"Dear Bob:
"I have now had a chance to talk to Bob Sickenger about 'The Child Buyer' and David Sawyer's involvement.

"Bob Sickenger tells me that John Hersey has the right of approval of the deal, but, at the same time, is not empowered to make the deal. This may or may not be a technicality.

"What is more important is the fact that Bob Sickenger tells me that even though he did in a general way agree to a deal with David Sawyer, he did not, in fact, agree to a number of the details of the proposal you forwarded on David Sawyer's behalf. This certainly should be discussed further.

Best,
/s/ JAY
JAY SANFORD

"P.S. Sickenger asked if he could see a copy of the letter agreement between John Hersey and David Sawyer."

"May 15, 1973
"Dear Bob:
"Thank you for your letter of May 11 and for the copy of the John Hersey agreement.

"I have sent all the correspondence on to Bob Sickenger.

"I must tell you that Mr. Sickenger's firm view is that, even though there were discussions regarding a deal, there is no binding obligation on him because he did not agree to many of the specifics of the deal.

"Nevertheless, I will get back to you after Mr. Sickenger has had a chance to look at the correspondence.

Best,
/s/ Jay
JAY SANFORD"

Two weeks later, Mr. Sanford proposed certain terms acceptable to defendant substantially different from the agreement which plaintiff asserts had previously been finalized.

Contrary to plaintiff's contention, the letters above set forth clearly negate the existence of an agreement, rather than establish it. At most, they evidence ongoing negotiations with a view toward a possible contractual relationship.

Lastly, plaintiff suggests that his success in obtaining Mr. Hersey's permission to allow him to direct the motion picture, .in claimed reliance on the oral agreement sued upon, warrants our application of the doctrine of equitable estoppel to avoid an injustice. However, it is now well settled that, in the absence of any allegation of actual fraud, "an oral contract, invalid by the statute of frauds, because by its terms it is not to be performed within one year from the making thereof, is not validated by part performance" *(Wahl v Barnum,* 116 NY 87, 98); and "a mere refusal to perform an oral agreement within the Statute, is, generally, not such fraud as will justify a court in disregarding the Statute". (3 Williston, Contracts [3d ed], § 533A, p 805. See, also, *Bulkley v Shaw,* 289 NY 133, 139; *Newkirk v Bradley & Son,* 271 App Div 658, 660–661.)

Accordingly, the order of Supreme Court, New York County (ROSENBERG, J.), entered on April 8, 1974, denying defendant's motion to dismiss the complaint and for summary judgment, should be reversed, on the law, and said motion granted, with costs.

MARKEWICH, J. P., TILZER and CAPOZZOLI, JJ., concur.

Order Supreme Court, New York County, entered on April 8, 1974, unanimously reversed, on the law, the motion granted and the complaint dismissed. Appellant shall recover of respondent $60 costs and disbursements of this appeal.