160 F.3d 106
 1998 Copr.L.Dec. P 27,836, 48 U.S.P.Q.2d 1658
 LANGMAN FABRICS, a division of Blocks Fashion Fabrics, Inc.
Plaintiff-Counter-Defendant-Appellant,
v.
GRAFF CALIFORNIAWEAR, INC., Arizona Mail Order Company,
Inc., Defendants-Counter-Claimants,
Fashion Initiatives, Defendant-Counter-Claimant-Appellee,
Samsung America Inc., Defendant-Appellee.
 No. 1269, Docket 97-7930.
 United States Court of Appeals,
Second Circuit.
 Argued March 18, 1998.
Decided Nov. 9, 1998.
 
 John P. Bostany, New York, N.Y. (The Bostany Law Firm, on the brief), for Plaintiff-Counter-Defendant-Appellant.
 Thomas Catalano, New York, N.Y. (Steven B. Prystowsky, Lester, Schwab, Katz & Dwyer, on the brief), for Defendant-Counter-Claimant-Appellee.
 Ira N. Glauber, New York, N.Y. (Jaffe & Asher, on the brief), for Defendant-Appellee.
 Before: JACOBS, LEVAL, and GIBSON,* Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Langman Fabrics appeals from the summary judgment entered against it in the United States District Court for the Southern District of New York (Baer, J.) in its copyright infringement suit against Fashion Initiatives, Inc. and Samsung America, Inc. Langman Fabrics claims that the defendants copied its plume design for fabric, which was registered under the Copyright Act of 1976, 17 U.S.C. § 201(b) (1994).[1] The district court held that Aaron Langman made concessions in his deposition fatal to Langman Fabrics' case and that his later elaborations on his earlier testimony could not raise genuine issues of material fact sufficient to show either that Langman Fabrics owned the copyright under the work-for-hire provision or that Aaron Langman was the author or joint author. Langman Fabrics v. Samsung America, Inc., 967 F.Supp. 131, 133-34 (S.D.N.Y.1997). The district court also held that even if Langman Fabrics had owned the copyright, it forfeited the copyright by failing to include the year of first publication in the copyright notice. Id. at 135. We reverse and remand.
 
 
 2
 Langman Fabrics is a converter of textiles, meaning that it converts greige goods (raw cloth) into finished solid or printed fabrics to sell to clothing manufacturers. Langman Fabrics is an unincorporated two-person operation;[2] Aaron Langman performs the creative functions of creating and obtaining fabric designs, and Gerald Block handles the financial aspects of the business.
 
 
 3
 On December 7, 1984, Langman Fabrics filed a copyright registration certificate with the United States Copyright Office for "Pattern # L-303 Plume," a design for textiles, as a "work made for hire" with a first publication date of July 1, 1984. Langman Fabrics printed fabric with the design bearing the copyright notice: "COPYRIGHT LANGMAN FABRICS."
 
 
 4
 Fashion Initiatives' catalog of available prints included the feather pattern that Langman Fabrics contends is copied from Langman's design. On December 8, 1995, a clothing manufacturer placed an order with Fashion Initiatives for 3,000 yards of the fabric. Fashion Initiatives in turn ordered the fabric from Samsung, a fabric broker, which ordered the fabric from E-Star, a Korean manufacturer. Samsung arranged to import the fabric into the United States.
 
 
 5
 Langman Fabrics filed this copyright infringement suit against Fashion Initiatives and Samsung America.[3]
 
 
 6
 Aaron Langman initially gave a deposition describing briefly how the plume design was created. He created it with a freelance artist working with him, and asked her to do a feather pattern similar to what the Three Musketeers wore in their hats with a soft, flowing, moving feathery pattern. She did a painting which he was not quite satisfied with. He made verbal, face-to-face corrections. He wanted the feathers finer and brought in a little more, and the repeat not to be overbearing, and he wanted certain colorings. He does not know how to draw. The artist made the corrections and Langman sent the design to Japan for printing. Langman stated that the artist was not an employee of Langman Fabrics.
 
 
 7
 After this deposition, and relying on it, Fashion Initiatives and Samsung filed their summary judgment motion arguing that Langman Fabrics was not entitled to ownership of the copyright under the work-for-hire provision, because Aaron Langman had admitted that the young woman who painted the design was a freelance artist and not an employee of Langman Fabrics. They also argued Langman forfeited its copyright by its failure to reproduce the first year of publication on its copyright notice, in accordance with 17 U.S.C. § 401(b)(1994).
 
 
 8
 Langman Fabrics responded to the motion by filing an affidavit by Aaron Langman directed to the work-for-hire issue. He stated that the freelance artist worked with him on many other designs that Langman Fabrics created in 1984. She was not an artist in her own right, but a form of creative talent that was used to create a line of patterns and designs to be sold by Langman Fabrics to its customers. She reported for work every day and conducted all of her work at Langman Fabrics. She was a temporary employee providing short term support. As was customary, she would be paid for the work done and all property rights to the design would remain the property of Langman Fabrics. Typically, according to Aaron Langman's affidavit, these assistants are students or recent graduates of design schools, and the fabric industry does not consider them owners of the intellectual property rights to designs that they work on. Aaron Langman personally supervised the assistant on a regular and continuous basis on the design specification, the elements of the patterns, and the colors. He was the originator of the idea and translated the idea into a fixed tangible expression through his stylist.
 
 
 9
 The district court declined to rule on the summary judgment motion because it did not consider the record before it adequate to resolve the work-for-hire question. The court stated, "[M]ore information along the lines set out in Aymes v. Bonelli, 980 F.2d 857 (2d Cir.1992), and other cases, particularly information with respect to employee benefits and tax treatment, is necessary." Langman Fabrics v. Samsung America, Inc., 967 F.Supp. 131 (S.D.N.Y.1997).
 
 
 10
 Accordingly, Aaron Langman was deposed a second time and testified at greater length on the circumstances under which the plume design was created. Aaron Langman produced a feather, which he said he had purchased in 1984, but had misplaced until he happened to come across it by coincidence shortly before his deposition.
 
 
 11
 He had the idea to create an airy, plume type of feather like the ostrich feathers in the hats in the movie The Three Musketeers. He wanted to create a pattern that was commercially feasible from that type of look. He played around with feathers on paper, laying them out in a manner that would be commercially feasible, and asked the artist to do a pencil drawing the way he laid them out. He made copies on the photocopier and played around with cutting out the feathers and laying them on a paper to approximate the look he wanted. He instructed the artist to bring the feathers closer together for the fine lines to overlap other feathers, because he didn't want too much space showing. He practically stood over the assistant because he wanted a certain look and a certain feeling. Of the four hours she spent on the pencil drawing, he stood over her for two of them. He instructed her to make further corrections to the drawing. After the drawing he picked colors from Japanese silk books that contained over 500 colors, and cut off little tabs and told her to do the colorings in one feather or the other. He wanted off-white, he wanted to reverse the fuschia with jade, he wanted a navy background, and he wanted the colors to be balanced. The artist was paid twenty-five dollars a day and while Langman thought she did not receive employee benefits or have taxes withheld, Gerald Block who handled the business aspects, testified that she received normal business benefits, whether disability or workmen's compensation, and FICA, and income taxes were deducted from her pay. She did not receive medical benefits.
 
 
 12
 After the supplemental discovery, the district court entered summary judgment for the defendants. The court held that, applying the work-for-hire criteria set out in Community for Creative Non-Violence v. Reid, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), and Aymes v. Bonelli, 980 F.2d 857 (2d Cir.1992), Langman Fabrics was not the author of the fabric design, because the artist who painted the design was an independent contractor, rather than an employee of Langman Fabrics. Langman Fabrics, 967 F.Supp. at 133-35. The first Reid criterion, the extent of the hiring party's control over the manner and means of creation, differed according to whether the court took the facts from Aaron Langman's first deposition or the second, expanded deposition. The district court held that the second deposition "depart[ed] radically" from his earlier testimony. Id. at 133. The court therefore refused to recognize the account in Langman's second deposition. Id. at 133-34. The court held that while Langman exercised some control over the artist, the other Reid criteria weighed in favor of treating her as an independent contractor. Id. at 134. Specifically, the court emphasized the level of skill required for the task the artist performed and the testimony that she received no medical or other employee benefits, such as vacation or sick leave. Id. The court did not accept Block's testimony that he withheld taxes from the artist's pay, since Langman Fabrics did not produce any documentary evidence substantiating this testimony. Id.
 
 
 13
 Alternatively, the court held that Langman Fabrics had failed to preserve its copyright by affixing a proper copyright notice. Langman Fabrics' copyright notice did not include the year of first publication. The court held that the design did not come within the exemption of 17 U.S.C. § 401(b)(2) allowing omission of the year date for works incorporated in useful articles. The court relied on a letter from an attorney in the Copyright Office which stated that "[a]ny such design per se is not considered to be a useful article." 967 F.Supp. at 135. The court held, "Since fabric design is not considered a useful article for purposes of the copyright laws, plaintiff's notice on 'Pattern No. L-303 Plume' is insufficient. Consequently the fabric lacks copyright protection on this score as well." Id.
 
 I.
 
 14
 On appeal Langman Fabrics argues that the district court erred in failing to view the facts in the light most favorable to it, the party resisting summary judgment. In particular, Langman Fabrics contends that the district court wrongly failed to give any effect to the account in Aaron Langman's second deposition of the circumstances of the plume design's creation, and refused to recognize Block's testimony that he withheld taxes from the artist's pay.
 
 
 15
 We review the district court's entry of summary judgment de novo. See Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir.1995). Under the familiar standard, we must view the record in the light most favorable to the party opposing summary judgment, drawing all possible inferences in its favor. See id.; Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 100 (2d Cir.1997). Summary judgment is proper only if there is no genuine issue of material fact, and undisputed facts entitle the movant to judgment as a matter of law. Rodriguez, 72 F.3d at 1061.
 
 
 16
 Under 17 U.S.C. § 201(b), "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." The statute defines "work made for hire" as "a work prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101 (1994). Accordingly, Langman Fabrics owns the copyright to the plume design if the person who created it was a Langman Fabrics employee acting within the scope of her employment. However, if the creator of the design was an independent contractor, then that person owns the rights to the work. The Supreme Court held in Reid that common law agency principles govern ownership of the copyright under the work-for-hire doctrine. 490 U.S. at 741, 109 S.Ct. 2166. Reid enumerated the criteria relevant to this decision:
 
 
 17
 In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required, the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.
 
 
 18
 Id. at 751-52, 109 S.Ct. 2166.
 
 
 19
 Not all the Reid factors will be significant in every case, and we must weigh in the balance only those factors that are actually indicative of agency in the particular circumstances before us. Aymes v. Bonelli, 980 F.2d at 861-62. Five of the Reid factors are of particular importance and will almost always be significant:
 
 
 20
 (1) the hiring party's right to control the manner and means of creation; (2) the skill required [of the hired person]; (3) the provision of employee benefits; (4) the tax treatment of the hired party; (5) whether the hiring party has the right to assign additional projects to the hired party.
 
 
 21
 Aymes, 980 F.2d at 861.
 
 
 22
 Questions of historical fact relevant to applying each factor are for the finder of fact, see Carter v. Helmsley-Spear, Inc., 71 F.3d 77, 85 (2d Cir.1995), cert. denied, 517 U.S. 1208, 116 S.Ct. 1824, 134 L.Ed.2d 930 (1996), but the ultimate determination, on settled facts, of whether a work qualifies as a work-for-hire is a question of law, which we review de novo. Aymes, 980 F.2d at 861. Langman Fabrics is entitled to a statutory presumption of the validity of the facts stated in its copyright registration. 17 U.S.C. § 410(c)(1994).[4] Langman Fabrics' registration stated that Langman Fabrics was the author of the plume design by virtue of the work-for-hire rule. The statutory presumption is by no means irrebuttable, but it does order the burden of proof. See Carol Barnhart, Inc. v. Economy Cover Corp., 773 F.2d 411, 414 (2d Cir.1985). Therefore, the defendants bear the burden of going forward with proof that Langman Fabrics was not the author of the design.
 
 A.
 
 23
 The district court's analysis of the Reid factors ran onto procedural shoals when the district court determined that it should not consider the testimony in Aaron Langman's affidavit and second deposition concerning the creation of the design because it was contradictory to Langman's first deposition.
 
 
 24
 In the first deposition, Aaron Langman said that the feather idea was his, and that he instructed the artist that he wanted a soft, flowing movement reminiscent of the plumes in the hats of the Three Musketeers. He told how the artist painted the design, but he was not satisfied, and asked her to redo the painting, telling her to "[bring it] in a little more" and to make the feathers finer. He also said he picked the colors. After the corrections, he approved the painting and sent it off to be printed. He also said that the artist was not an employee of Langman Fabrics.
 
 
 25
 In the affidavit, Aaron Langman did attempt to backpedal on his earlier legal characterizations that the artist was not an employee and that she was a "freelance artist." However, his backpedaling consisted not in contradicting earlier factual statements (as opposed to legal conclusions), but in giving more details relevant to the employment question. For instance, he said the young woman reported to Langman Fabrics for work every day, conducted all her work at Langman's place of business, and worked under his close supervision.
 
 
 26
 The district court declined to rule on the summary judgment motion, advising the parties that it would need more facts to resolve the work-for-hire issue.
 
 
 27
 Aaron Langman then gave additional deposition testimony describing in laborious detail, frequently at the urging of Fashion Initiatives' counsel, the circumstances of the feather design's creation. In this deposition he produced one of the three original feathers depicted in the painting. He described how he had arranged the feathers in a "commercially feasible" manner and photocopied them. He gave the photocopy to the artist to copy in her pencil drawing. He said that he stood over her and gave her instructions about the tapering of the feathers, the size of the feathers, the overlapping, the spacing, the thickness, the relationship of one feather to another, and the overall view of all the feathers. The next day he had her thicken some lines and thin others, balance the design and bring the feathers in closer. He described the little silk tabs that he used to dictate his color choice to the artist and how he adjusted the balance of the colors as the work progressed.
 
 
 28
 The district court, comparing the two depositions, concluded that Aaron Langman had given two contradictory accounts:
 
 
 29
 [I]n his second deposition [he] departs radically from his earlier testimony. Suddenly, he actually created the design. He arranged photocopies of ostrich feathers and then asked the artist to draw a pencil sketch. This does not create a genuine issue of material fact so as to defeat a motion for summary judgment. It is well-settled that a party may not defeat such a motion by submitting an affidavit that disputes his prior sworn testimony. Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 572 (2d Cir.1991) (citing Mack v. United States, 814 F.2d 120, 124 (2d Cir.1987)).
 
 
 30
 967 F.Supp. at 133-34.
 
 
 31
 Similarly, the district court noted a conflict between Aaron Langman's testimony that he paid the artist "$25 [per day] and that was it" and Block's testimony that he withheld taxes for her. 967 F.Supp. at 134 n. 3.
 
 
 32
 We have indeed held that a party may not create an issue of fact precluding summary judgment by offering an affidavit that contradicts his earlier sworn testimony in the case. See Mack v. United States, 814 F.2d 120, 124-25 (2d Cir.1987); Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 572 (2d Cir.1991). On the other hand,
 
 
 33
 [a]lthough a party does not show a triable issue of fact merely by submitting an affidavit that disputes his own prior sworn testimony, a material issue of fact may be revealed by his subsequent sworn testimony that amplifies or explains, but does not merely contradict, his prior testimony, especially where the party was not asked sufficiently precise questions to elicit the amplification or explanation.
 
 
 34
 Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir.1996) (citations omitted). Accord Hayes v. New York City Dept. of Corrections, 84 F.3d 614, 619-20 (2d Cir.1996). If there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because of an earlier account that was ambiguous, confusing, or simply incomplete.
 
 
 35
 Aaron Langman's initial testimony revealed that he was uncertain and that Block was a better source of information about financial arrangements. It was Aaron Langman's consistent position that he was the creative end of the business and that Block would be the one to know about financial details. Langman's actual testimony was avowedly uncertain:
 
 
 36
 Q: Were there any taxes withheld?
 
 
 37
 A: I don't know.
 
 
 38
 Q: Who would know that?
 
 
 39
 A: I don't think so. I think we paid her $25.00 and that was it.
 
 
 40
 Although Langman's later account of the design's creation is far more detailed than the first, the additional factual details concerning the use of photocopied feathers and the extent of his control over the artist's work are not inconsistent with his first, brief account. Indeed, the district court's order suggesting further discovery on the work-for-hire issue actually invited the parties to develop the record. The expanded record included Block's testimony, which supported the conclusion that the artist was an "employee" within the meaning of the Reid test. Though, of course, a finder of fact may conclude that the later elaboration suggests fabrication, we are not prepared to say as a matter of law that Aaron Langman's expanded version of the creation story cannot be considered at the summary judgment stage.
 
 
 41
 Aaron Langman's attempt to undo the harmful implication of his statement in the first deposition that the artist was not an employee does result in a conflict between the two depositions. However, since Langman's statement expressed a legal conclusion that he was not fully qualified to render, it is reasonable to allow him to testify about facts that would lead to a different legal conclusion.
 
 B.
 
 42
 We therefore have somewhat different facts to weigh in the Reid balance than those considered by the district court. When we take into account Aaron Langman's second deposition, the first Reid factor, "the hiring party's right to control the manner and means by which the product is accomplished," 490 U.S. at 751, 109 S.Ct. 2166, rather clearly weighs in favor of Langman Fabrics. According to the second deposition, Aaron Langman controlled the artist's work to the smallest detail.
 
 
 43
 The level of skill required of the hired person weighs in favor of independent contractor status, since Aaron Langman said that he hired the artist because he himself could not draw. See Aymes, 980 F.2d at 861-62; Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc., 58 F.3d 1093, 1097 (6th Cir.1995) (importance of producer's control of artistic objectives of project tempered by producer's reliance on artistic ability of assistants); Marco v. Accent Pub. Co., 969 F.2d 1547, 1551 (3d Cir.1992).
 
 
 44
 Employee benefits and tax treatment, viewed in the light most favorable to Langman Fabrics, weigh in favor of employee status, since Block testified that he withheld tax for the artist and that she received such benefits as disability and worker's compensation, though not medical insurance.
 
 
 45
 The location and regularity of the work help Langman Fabrics, since the artist drew and painted the design at Langman Fabrics' place of business so that Aaron Langman could collaborate with her as she worked. Aaron Langman testified that the artist did other work for him, and that she worked regular hours, from about 1:00 to 4:00 p.m. every afternoon; these two factors support a finding of employment. See Marco, 969 F.2d at 1551 (regular work schedule weighs in favor of employment relation).
 
 
 46
 The source of the artist's equipment is an indeterminate factor in this case, since the artist selected her own equipment, but Langman Fabrics paid for it.
 
 
 47
 It is clear from the record that Langman Fabrics was in the fabric design production business, so that producing such a design was integral, rather than collateral, to its business.
 
 
 48
 On the record in this case, the "parties' intent" factor is a matter of credibility for the trier of fact. Aaron Langman's description of the artist as "freelance" suggests independent contractor status. Hi-Tech, 58 F.3d at 1097-98. However, Langman later explained that the term "freelance," as he used it, meant that her employment at Langman Fabrics was only temporary. Aaron Langman testified that it was the custom in the converting business that the converter who hires the artist owns the copyright to the design. Langman Fabrics also produced the affidavit of a trade group official that student interns, such as the one who assisted Aaron Langman, do not customarily own any interest in the designs they produce.
 
 
 49
 Finally, Aaron Langman testified that the artist worked for him for about three months.[5]
 
 
 50
 In sum, resolving all factual disputes favorably to Langman Fabrics, the evidence would support a holding that the artist was Langman Fabrics' employee under the Reid test. Langman Fabrics therefore made an adequate showing that it was the author of the design under the work-for-hire doctrine, and it should have been allowed to proceed to trial under this theory.
 
 
 51
 Alternatively, Langman Fabrics argues that its employee, Aaron Langman, qualified as sole or joint author of the design. The district court did not reach this question because it refused to consider the evidence in Aaron Langman's second deposition that would support such a theory. Since we hold that Langman Fabrics can rely on Aaron Langman's later testimony, the district court should also consider whether Langman has made a sufficient showing to survive summary judgment on the theory that Aaron Langman was an author of the design.II.
 
 
 52
 The defendants argue that even if Langman Fabrics was the author of the design under the work-for-hire doctrine, it invalidated its copyright when it failed to comply with the requirement in 17 U.S.C. § 401(b)(2) that a copyright notice include the year of first publication.[6] However, "[t]he year date may be omitted where a pictorial, graphic, or sculptural work ... is reproduced in or on ... any useful articles." 17 U.S.C. § 401(b)(2). Langman Fabrics argues that the design was reproduced on fabric and that fabric is a useful article. Therefore, Langman Fabrics contends, no date was necessary in its notice.
 
 
 53
 The district court held that "fabric design is not considered a useful article for purposes of the copyright laws." 967 F.Supp. at 135. Of course, the question is not whether the design itself is useful, but whether the fabric on which the design is printed is useful. See William F. Patry, Copyright Law and Practice 75-76 (1998 Supp.) (criticizing district court decision in this case for stating per se rule that fabric design is not "useful" without asking whether the fabric on which the design is printed is intended to be part of a useful article "such as a dress or a couch cover").
 
 
 54
 "Useful article" is defined in the Copyright Act as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. A fabric that was made merely as a medium to display a design, such as a wall hanging or a sampler, would not fit the definition. See Patry, supra. On the other hand, Aaron Langman testified that his fabrics were made to be used in the manufacture of dresses and sportswear. These fabrics would thus have utilitarian functions of providing warmth and decency.
 
 
 55
 The defendants argue that the fabric not yet made into clothing is not useful, but only has the potential to be made into a useful article. The statutory definition of "useful article" includes its components: "An article that is normally a part of a useful article is considered a 'useful article.' " 17 U.S.C. § 101. Thus, the necessity of an item being incorporated in a larger article does not deprive it of "usefulness" under the statute.
 
 
 56
 The district court relied on a letter from an attorney in the Copyright Office of the Library of Congress. The court held that it must defer to any reasonable interpretation of the Copyright Act by the Copyright Office. However, this letter failed to distinguish between fabric design and the fabric on which a design is printed. The letter refers to "design per se," whereas this case deals with a design imprinted on fabric. The letter then goes on to discuss fabric which has been manufactured into clothing, which is also beside the point in this case. Although he does not say so directly, the writer of the letter appears to assume that fabric is not a "useful article" until its final manufacture into finished articles of clothing.
 
 
 57
 The implicit assumption in the letter that fabric itself is not a useful article is apparently contradicted in the 1984 Compendium II of Copyright Office Practices, section 1006, "Year date in the copyright notice": "Those textiles and fabrics which are useful articles do not require a year date...." This section of the Compendium does not distinguish between stages of manufacture by differentiating "fabrics" from "garments." Instead, the Compendium distinguishes between "fabrics" which are useful and those which are not. If any "fabric" is useful, fabric that is made to be worn as clothing surely is.
 
 
 58
 Moreover, the legislative history to the Copyright Act of 1976 also reflects the understanding that fabrics are generally classified as useful. The House Report discusses the Act's definition of "useful article." After explaining that the primary purpose of the concept in the copyright law is to distinguish between "copyrightable works of applied art" and "uncopyrighted works of industrial design," the Report continues, "A two-dimensional painting, drawing, or graphic work is still capable of being identified as such when it is printed on or applied to utilitarian articles such as textile fabrics, wallpaper, containers, and the like." H.R.Rep. No. 94-1476, at 55 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5668 (emphasis added).
 
 
 59
 The plain meaning of the statute and the implicit meaning of the Copyright Office's Compendium require a holding that fabric manufactured for the purpose of being made into clothing is a "useful article" within the meaning of section 401(b)(2). Langman Fabrics therefore did not invalidate its copyright by failing to include the year of first publication in its copyright notice.
 
 III.
 
 60
 Finally, as an alternative basis for upholding the district court's entry of judgment on a ground not considered by the district court, the defendants contend that they have established prior independent creation of the plume design. Fashion Initiatives filed the affidavit of its president, Barry Bernstein. According to Bernstein, his former company, Tigress Pride, bought fabric with the feather pattern that is the subject of this case from a Korean converter in 1982 and sold the fabric to a Canadian company at that time. (Aaron Langman testified that he created his plume design in 1984.) Representatives of the Korean and Canadian companies filed affidavits consistent with Bernstein's testimony, together with copies of undated fabric swatches said to be from 1982.[7] Significantly, the representative of the Korean converter, E-Star, could not say who created the design or when it was created. Moreover, there is a fax order in the record dated October 28, 1995, for the engraving of the pattern. Bernstein testified that he asked Mr. Koo to engrave the feather pattern in October 1995. This, of course, is only circumstantial evidence that Bernstein obtained the pattern at about the time it was engraved, but significantly there is no documentary evidence showing Bernstein had the pattern any earlier than 1995.
 
 
 61
 Langman Fabrics has come forward with the only evidence of copying available to it--access and probative similarity between its design and the design Fashion Initiatives sold.[8] See 4 Melville Nimmer and David Nimmer, Nimmer on Copyright § 13.01[B] (1998) ("It is generally not possible to establish copying as a factual matter by direct evidence, as it is rare that the plaintiff has available a witness to the physical act of copying.... Therefore, copying is ordinarily established indirectly by the plaintiff's proof of access and 'substantial' similarity.") (footnotes omitted). Fashion Initiatives has attempted to rebut Langman's prima facie case with its testimony that the design was created by some unknown person at some unknown time before 1982. Fashion Initiatives has not come forward with "convincing documentary evidence establishing independent creation", see 3 Nimmer, supra, § 12.11[D], at 12-181--12-182, but instead relies on undocumented assertions by persons associated with Fashion Initiatives that they had the design before 1984. Cf. 3 Nimmer, supra, § 12.11[D], at 12-181 n. 98.3 (trier of fact is free to reject testimony supporting a claim of independent creation).
 
 
 62
 We have recently held that when a copyright plaintiff establishes a prima facie case of infringement and the defendant adduces testimony of interested parties claiming independent creation, the plaintiff need not present direct evidence contradicting the independent creation theory to avoid summary judgment. See Repp v. Webber, 132 F.3d 882, 891 (2d Cir.1997), cert. denied, --- U.S. ----, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998). Both the evidence of access and similarity, on the one hand, and of independent creation, on the other, are relevant to the ultimate issue of copying, and the conflict of that evidence creates a material issue of fact; on such a record we may not enter summary judgment for either party.
 
 
 63
 We reverse the district court's entry of summary judgment and remand for trial.
 
 JACOBS, Circuit Judge, dissenting:
 
 64
 I respectfully dissent. The record on this appeal presents several grounds for affirmance, but I will confine this dissent to the plaintiff's failure to rebut testimony of independent creation, testimony that affords a complete defense.
 
 
 65
 The district court apparently assumed, without deciding, that plaintiff had made out a prima facie case. A copyright plaintiff can make out a prima facie case of unauthorized copying by demonstrating: (1) that defendants had access to the copyrighted work; and (2) that the allegedly infringing work and the copyrighted work are substantially similar.[1] Williams v. Crichton, 84 F.3d 581, 587 (2d Cir.1996) (citing Kregos v. Associated Press, 3 F.3d 656, 662 (2d Cir.1993), cert. denied, 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994)). On the current record, the evidence of access, if any, is extremely weak. Evidence that the two renderings of ostrich feathers are substantially similar is also slight: one ostrich plume looks like another, so it is hard to say how much of the similarity is traceable to protected elements rather than (a) elements that are not sufficiently original or (b) elements that are inextricably wedded to the idea of an ostrich feather pattern rather than its expression. But this evidence was evidently presumed--for the purpose of the summary judgment motion--to constitute a prima facie case, and I will make the same assumption.
 
 
 66
 Defendants, however, have come forward with the affidavits of third party witnesses who aver that they saw the allegedly infringing pattern in defendants' possession several years prior to the date on which plaintiff claims to have created the infringed pattern. The question then is whether the question of material fact deemed to have been raised (for the purposes of the motion) by plaintiff's putative evidence of "inferential copying" remains in genuine dispute given defendants' uncontradicted direct evidence that it did not copy plaintiff's pattern. It does not. Defendants have effectively rebutted the presumption of copying. See 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.11[D], at 12-181-12-182 (1998) ("If the defendant offers convincing documentary evidence establishing independent creation, it is incumbent on plaintiff to counter that evidence."); see also Novak v. National Broadcasting Co., 752 F.Supp. 164, 170 (S.D.N.Y.1990) (Sweet, J.) (granting summary judgment to defendant on the issue of prior independent creation). Plaintiff has offered no refutation of the non-parties' affidavits, has asserted no ground of bias, and has sought no discovery that might lead to rebuttal.
 
 
 67
 In Favia v. Lyons Partnership, 1996 WL 194306 (S.D.N.Y. April 23, 1996), aff'd, 112 F.3d 503 (2d Cir.1997) (table), summary judgment was granted in favor of a defendant who proffered unrebutted evidence showing that the defendant had created his version of the allegedly infringing song some time before the plaintiff's asserted date of creation. Judge Sotomayor noted:
 
 
 68
 This evidence is fatal to [the plaintiff's] case, and would be so even if [the plaintiff] had met her affirmative burdens. Because she offers no evidence to controvert [the defendant's] proof of independent creation, summary judgment must follow as a matter of law.
 
 
 69
 Id. at * 4; see also Repp v. Webber, 132 F.3d 882, 891 (2d Cir.1997) (noting that independent creation is an affirmative defense and may be used to rebut a prima facie case of infringement); Eden Toys v. Marshall Field & Co., 675 F.2d 498, 501 (2d Cir.1982) ("Evidence of independent creation may be introduced by a defendant to rebut a plaintiff's prima facie case of infringement.").
 
 
 70
 The majority relies on our (distinguishable) decision in Repp v. Webber, 132 F.3d 882 (2d Cir.1997), in which plaintiff Repp alleged that his composition, "Till You," was infringed by defendant Webber's "Phantom Song," and Webber counterclaimed on the ground that "Till You" was an infringement of Webber's earlier song, "Close Every Door." Id. at 884. Webber offered his affidavit and that of his wife, attesting that "Phantom Song" was composed in 1983; however, "Till You" was distributed as part of an album that was released in 1978, so Webber was compelled to rely on expert testimony, which was contradicted by expert testimony on the other side: plaintiff's experts opined that "Phantom Song" was so strikingly similar to "Till You" as to preclude any conclusion other than copying, while Webber's expert traced the characteristic phrases in "Phantom Song" to three Webber songs (including "Close Every Door") that predated the plaintiff's creation of "Till You." Thus, in Repp there was conflicting evidence as to a material fact.
 
 
 71
 Not so in the present case. Plaintiff has presented no evidence, expert or otherwise, tending to show that the allegedly infringing pattern could only have been derived from the plaintiff's design, and has rested on its weak, putative prima facie case when (in Professor Nimmer's word) it is "incumbent" on the plaintiff to come forward with some evidence to counter the defendant's evidence of prior creation.
 
 
 72
 The defendants here have offered affidavits of third parties whose testimony is both unimpeached and unrebutted, whereas in Repp we faulted the district court for "accept[ing] only the version of interested witnesses on the question of separate creation." Id. at 891.
 
 
 73
 The majority cites an October 1995 fax in which the president of one of the defendant companies arranged for the feather pattern to be engraved, and concludes that a question is thereby raised as to whether the defendants' design was not created until 1995. The fax order shows nothing more than that defendants did not have an engraving of the design in 1995; they may never have made an engraving, or they may previously have made one and lost or discarded it. The fax thus demonstrates that defendants had the design in 1995 (because they were sending it to be engraved), but does not suggest that they acquired it recently. (Defendants, unlike plaintiff, need not be the author of the design to prevail; there is therefore nothing suggestive in the fact that they may not have had the engraving in the first instance.)
 
 
 74
 An essential element of a copyright claim is unauthorized copying of the protected material. Laureyssens v. Idea Group, Inc., 964 F.2d 131, 139 (2d Cir.1992). If, as the unrebutted testimony shows, the supposedly infringing pattern was in defendants' possession as early as 1982, they cannot have taken the design from plaintiff, which claims to have created it in 1984. The essential element of copying is therefore rebutted. Because plaintiff bears the burden of proof, defendants have satisfied their burden under Rule 56 by showing "that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).
 
 
 75
 The majority opinion (in my view) arrives at the wrong result, but it should not be read to raise the bar for granting summary judgment on the defense of independent prior creation.
 
 
 
 *
 Hon. John R. Gibson, of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 Section 201(b) provides:
 Works Made for Hire.--In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.
 
 
 [2]
 There is some dispute about whether Aaron Langman is an employee or an independent contractor; he describes himself as an "employee", but the defendants point to evidence that he is paid as an independent contractor
 
 
 [3]
 Graff Californiawear, Inc. and Arizona Mail Order Company, Inc. were originally named as defendants but settled and were dismissed
 
 
 [4]
 17 U.S.C. § 410(c) provides:
 (a) In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.
 
 
 [5]
 Block's deposition states that she worked only three weeks, but in an affidavit he sought to correct that to three months, stating that the transcript contained a typographical error
 
 
 [6]
 Section 401 does not apply to works first published after March 1, 1989. See Innovative Networks, Inc. v. Satellite Airlines Ticketing Centers, Inc., 871 F.Supp. 709, 720 (S.D.N.Y.1995). The work in this case was published in 1984 and is therefore subject to section 401
 
 
 [7]
 These "third party witnesses" relied on by the dissent are not neutral witnesses. They are business associates of Bernstein. Moreover, the Korean converter, E-Star, sold the fabric at issue in this case to Fashion Initiatives. See page 108, supra
 
 
 [8]
 The dissent states that it will assume, as did the district court, that Langman Fabrics made a prima facie case of access and similarity. Infra at 116. Since the defendants did not attack the sufficiency of the prima facie case except by their independent creation theory, and therefore the parties did not develop a record on this issue, we are in no position to judge whether Langman's case is "weak," as the dissent contends, see infra at 117
 
 
 [1]
 As we noted in our recent opinion in Castle Rock Entertainment, Inc. v. Carol Publishing Grp., Inc., 150 F.3d 132, 137 (2d Cir.1998), this degree of similarity is properly known as "probative similarity" to distinguish it from the "substantial similarity" required to show that the copying that occurred was qualitatively and quantitatively great enough to fall afoul of the Copyright Act