**Rommy REVSON, Plaintiff,**

v.

**CLAIRE'S STORES, INC. and Claire's Boutiques, Inc., Defendants.**

**No. 00 CIV. 1661(LAK).**

United States District Court,
S.D. New York.

Oct. 30, 2000.

Judd Burstein, Laurie J. McPherson, Daniel L. Wallach, Burstein & McPherson LLP, New York City, for Plaintiff.

· Barry Magidoff, Wayne M. Josel, Greenberg Traurig LLP, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff, a citizen of Florida, is the holder of design patents on a number of hair accessories commonly known as "scrunchies." She brings this contract action against Claire's Stores, Inc. ("Stores"), a Delaware corporation headquartered in Florida, and its wholly owned subsidiary, Claire's Boutiques, Inc. ("Boutiques"), also a Delaware corporation but headquartered in Illinois. The complaint asserts two claims for relief. The first alleges breach of a written license agreement by Boutiques and the second breach of an alleged oral agreement by Stores in that each defendant allegedly failed to pay royalties due under the agreements on "products covered by [plaintiff's] patents" and failed to submit to royalty audits. Defendants have counterclaimed for a declaration that plaintiff's design patents are invalid.

The action was removed to this Court by defendants on the ground that plaintiff's claims depend upon a determination of the scope of plaintiff's patents and therefore lie within the exclusive jurisdiction of the federal courts, a proposition which plaintiff does not dispute. The matter now is before the Court on (1) defendants' motion to transfer the action to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a), (2) plaintiff's cross-motion for partial summary judgment determining that (i) plaintiff and Stores have a valid oral agreement as alleged in the complaint, (ii) plaintiff and Boutiques have a valid written agree-

·ment pursuant to which Boutiques is obliged to pay royalties for both foreign and domestic sales of her licensed designs, (iii) defendants will not be heard to assert the invalidity of plaintiff's patents, and (iv) defendants breached their respective agreements with plaintiff by failing to permit her to audit their books and records, and (3) defendants' cross-motion for summary judgment dismissing plaintiff's second claim for relief and determining that the U.S. license agreement covers only sales of products in the United States.

■ In order fairly to evaluate the transfer motion, which requires consideration of the relative convenience to parties and witnesses of litigating this case here or in Florida, it is useful to determine whether any of the partially dispositive motions are meritorious, as only then can the Court focus on what really must be litigated further. Accordingly, the Court first takes up the parties' cross-motions.

*Partial Summary Judgment Motions*

*The Oral Contract Claim*

Plaintiff, in advance of discovery, seeks a determination that the oral agreement alleged in her claim against Stores exists and is valid. Stores contends that the contract was incapable by its terms of performance within one year and therefore is barred by the Statute of Frauds.[1] In any case, it argues, there is a triable issue of fact as to the existence of the alleged contract.

The terms of the alleged oral agreement were that "if [Stores] were to sell any of [plaintiff's] patented products outside the United States, it would pay [plaintiff] roy-alties on those sales in accordance with the terms set forth in the [written] License Agreement" between Boutiques and plaintiff.[2] Neither the alleged oral agreement nor the written agreement to which it allegedly referred stipulated any duration. And while the written License Agreement provided for termination by written agreement of the contracting parties, that adds nothing, as all contracts are terminable by mutual consent of the contracting parties. This alleged agreement thus comes within *D & N Boening, Inc. v. Kirsch Beverages, Inc.*,[3] which makes clear that an oral agreement of indefinite duration is barred by Section 5–701 unless it may be performed fully within one year. Termination by breach or, by necessary implication, by mutual consent is not performance.

Plaintiff nevertheless contends that defendants have partially performed and judicially admitted the existence of the oral agreement, either of which would be sufficient to take the alleged contract out of the Statute of Frauds.

■ Plaintiffs' judicial admission contention is without merit. Plaintiff relies on Section 5–701, subd. b.3(c), of the New York General Obligations Law, which provides that an admission of the existence of a contract in a "pleading, testimony or otherwise in court ..." is sufficient evidence of the making of the contract. But plaintiff overlooks the fact that Section 5–701, subd. b, applies only to "qualified financial contracts" as there defined.[4] The alleged contract here at issue is not a qualified financial contract within the meaning of the statute.[5] And putting aside this inapplicable statute, even a clear admission[6] in unsigned testimony in an

---

1. N.Y. GEN. OBLIG. L. § 5–701, subd. a.1 (McKinney 1989 & Supp.2000).

2. Cpt ¶ 9.

3. 63 N.Y.2d 449, 483 N.Y.S.2d 164, 472 N.E.2d 992 (1984).

4. *Id.* §§ 5–701, subd. b.1, 5–701, subd. b.2.

5. *See id.* § 5–701, subd. b.2.

6. Plaintiff's assertion that there has been a clear admission here is an over-statement as well.

The complaint alleges that the oral agreement was made on behalf of Stores by its chief executive officer, Mr. Schaefer (cpt ¶ 9), who flatly denies the existence of any such agreement. Schaefer Decl. (attached to Salky Decl.) ¶ 3. The testimony he gave in a prior unrelated arbitration is not irreconcilably in

unrelated arbitration proceeding would not take the contract out of the Statute of Frauds.[7]

█ The part performance argument is no more meritorious. Although part performance often will take an otherwise unenforceable contract out of the Statute of Frauds, this principle does not apply to a contract that is unenforceable because it is incapable of performance within one year.[8]

Accordingly, defendants' motion for partial summary judgment dismissing the second claim for relief is granted on the ground that it is barred by the Statute of Frauds.

*Plaintiff's Motion With Respect to Royalties on Foreign Sales*

█ Plaintiff next seeks summary judgment determining that Boutiques is obliged to pay it a royalty pursuant to a written license agreement on all sales of products embodying plaintiff's designs, irrespective of where the sales occur. The argument, however, is without merit.

The license agreement in question granted to Boutiques a nonexclusive license for the sale of the "Licensed Products." "Licensed Products" was defined to mean hair bands "embodying the design" protected by the "Licensed Properties." "Licensed Properties" was defined to mean U.S. Design Patent No. 315,226 "and in addition the Rommy III will be included in the agreement at [Boutiques'] option." The royalty clauses provided:

"4.2. [BOUTIQUES] shall pay to [plaintiff] a continuing royalty of five percent (5%) of the net selling price as defined herein of all Licensed Products sold by [it] but not including sales to as a wholesalers, in the United States throughout the term hereof."

"4.3. [BOUTIQUES] shall pay to [plaintiff] a continuing royalty of eight percent (8%) of the net selling price as defined herein of all Licensed Products sold by [it] directly to as a wholesalers in the United States throughout the term hereof." (Strikeouts in original)

In these circumstances, plaintiff cannot reasonably suggest that the written license

---

conflict with his current account. Moreover, the explanation offered appears to have sufficient merit to warrant its consideration by the trier of fact, assuming *arguendo* that this claim were not barred by the Statute of Frauds.

Plaintiff nevertheless claims that she is entitled to summary judgment on this point because Mr. Schaefer admitted the existence of the alleged agreement in testimony in an unrelated arbitration hearing involving a different dispute. She invokes Second Circuit cases that have held that a party who has testified in a deposition to a proposition relied upon by the adversary in seeking summary judgment cannot manufacture an issue of fact by submitting an affidavit inconsistent with the prior testimony. *E.g., Bickerstaff v. Vassar College*, 196 F.3d 435, 455 (2d Cir.1999), cert. denied, ─── U.S. ───, 120 S.Ct. 2688, 147 L.Ed.2d 960 (2000). But that proposition is not without limitations. *See, e.g., Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir.1999); *Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106, 112 (2d Cir.1998); *cf. Parker v. Columbia Pictures Industries*, 204 F.3d 326, 333 (2d Cir.2000). The principle does not appear to have been extended by the Circuit to testimony in unrelated proceedings as dis-

tinguished from the case in which the affidavit is submitted. In any case, in order for it to apply, there must be a direct conflict between the deposition testimony and the affidavit and the point must have been the subject of extensive examination in the deposition. *Id.* Moreover, at least where the affidavit contradicts testimony given in an separate proceeding, the witness evidently should be given an opportunity to explain any inconsistency. *See Parker*, 204 F.3d at 333.

**7.** *See Smith v. Muss*, 203 Misc. 356, 358, 117 N.Y.S.2d 501, 503 (N.Y.Sup.1952), *appeal dismissed*, 281 A.D. 957, 122 N.Y.S.2d 377 (1st Dept.1953) (admission in unsigned deposition insufficient to take alleged oral contract out of statute).

**8.** *E.g., Regal Custom Clothiers, Ltd. v. Mohan's Custom Tailors, Inc.*, No. 96 Civ. 6320 SS, 1997 WL 370595, *4 (S.D.N.Y. July 1, 1997); *Konigsberg v. Security National Bank*, 66 F.R.D. 439, 443 (S.D.N.Y.1975); *Sawyer v. Sickinger*, 47 A.D.2d 291, 366 N.Y.S.2d 435 (1st Dept.1975); *Culotta v. Banana Sales Corp.*, 142 Misc. 149, 254 N.Y.S. 84, 85 (N.Y.Sup.1931); 61 N.Y. JUR.2D, *Frauds, Statute of* § 289, at 437 (1987).

agreement unquestionably obliges Boutiques to pay her royalties on any sales it might make outside the United States. The license at least appears to be one to engage in activities that, save for its existence, would be within plaintiff's exclusive rights as a holder of U.S. patents, which of necessity are limited to the United States. The royalty clauses are susceptible of the interpretation that Boutiques' obligation was to pay royalties on Licensed Products sold by it in the United States. This interpretation draws particular strength from the appearance of the comma after the word "wholesalers" in Section 4.2, as the comma indicates that the phrase "but not including sales as wholesaler" is a parenthetical expression and that the phrase "in the United States" modifies "all Licensed Products sold by" Boutiques rather than "sales as a wholesaler." In consequence, the license agreement is ambiguous, and plaintiff is not entitled to partial summary judgment on this claim either.

*Plaintiff's Claim of Breach of the Audit Provisions of the Contracts*

Inasmuch as defendants are entitled to dismissal of the oral contract claim on Statute of Frauds grounds and, absent that defense, there in any case would be an issue of fact as to whether there was any agreement between plaintiff and Stores, there certainly is no basis for summary judgment on plaintiff's claim that Stores breached the audit provisions of that alleged agreement.

■ The written license agreement between plaintiff and Boutiques does contain an audit provision. Plaintiff claims breach on the basis of an alleged refusal to give her accountant, Mr. Hargadon, access to defendants' books and records.[9] The only support given for that assertion in plaintiff's Rule 56.1 statement, however, is a reference to paragraph 10 of Exhibit C.

Exhibit C, however, is defendants' answer, paragraph 10 of which merely admits that Mr. Hargadon requested "an audit" and that defendants denied the request. But the fact that defendants admit having denied that request does not necessarily establish the absence of a genuine issue of material fact as to whether Boutiques breached its agreement. They assert that the request sought access to far more than plaintiff was entitled to see. Indeed, it is not even clear that the records to which Mr. Hargadon sought access included the records that plaintiff was entitled to have him inspect. Accordingly, plaintiff is not entitled to summary judgment on this claim either.

*Licensee Estoppel*

Plaintiff seeks partial summary judgment dismissing defendants' third affirmative defense, which alleges:

"Each of Revson's Patents ... is invalid for failure to meet the conditions for patentability set forth in Sections 103 and 112, of Title 35, United States Code."

She contends that they are estopped to assert the invalidity of the patents because they are licensees who neither ceased payment of royalties nor notified plaintiff that the reason for a cessation was the claimed invalidity of the patents. Plaintiff relies on *Studiengesellschaft Kohle, M.B.H. v. Shell Oil Co.*[10]

In *Lear v. Adkins*,[11] the Supreme Court held that the doctrine of estoppel may not be employed by a patent licensee in defense of a claim by the licensor for unpaid royalties on the ground that the patent in question is invalid.[12] Nevertheless, the doctrine of licensee estoppel is not entirely dead. The *Kohle* case on which plaintiff relies stands for the proposition that a

9. Pl. 56.1 St. ¶ 53.

10. 112 F.3d 1561 (Fed.Cir.1997), *cert. denied,* 522 U.S. 996, 118 S.Ct. 560, 139 L.Ed.2d 401 (1997).

11. 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969).

12. *Id.* at 674, 89 S.Ct. 1902.

licensee is estopped to challenge the validity of a licensed patent in defense of a claim for unpaid royalties "until it (i) actually ceases payment of royalties, and (ii) provides notice to the licensor that the reason for ceasing payment of royalties is because it has deemed the relevant claims to be invalid." [13] But it does leave open the possibility that *Lear, Inc. v. Adkins* will be applied once the licensee stops paying royalties on the grounds of alleged invalidity. It therefore is important to examine just what is at issue here.

Plaintiff's first claim for relief seeks judgment against Boutiques in relevant part for unpaid royalties—royalties due and payable prior to the institution of this action. It is undisputed that Boutiques never ceased royalty payments prior to the filing of this suit on the ground of the alleged invalidity of the patents.[14] In consequence, *Kohle* seems directly applicable.

Although defendants concede that *Kohle* precludes them from recapturing any royalties previously paid, they seek to distinguish the case by contending that what is at issue here is plaintiff's assertion that she is entitled to royalties under the license agreement on products other than those for which royalties have been paid. In consequence, defendants argue, they should not be barred from challenging the validity of the patents to the extent that the patents apply to those other products.

█ Defendants' argument is unpersuasive. The Federal Circuit's rationale in *Kohle* was that a patent licensee who fails to assert a claim of invalidity benefits by retaining the protection of the licensed patent and deprives the public of the full and free use of the patented product by withholding a successful validity challenge. Accordingly, the licensee should not be permitted to avoid payment of royalties for any such period on grounds of patent in-

validity. That rationale applies here, but it is important to recognize its limits.

Surely the consequence of *Kohle* is that Boutiques' assertion of invalidity is no defense to plaintiff's claim for royalties due in respect of sales made prior to the filing of the complaint. Hence, plaintiff's motion for partial summary judgment striking the third affirmative defense is well grounded. On the other hand, the complaint speaks as of the date of its filing. If Boutiques, which now has asserted invalidity in its answer, were to cease paying royalties on the ground of alleged patent invalidity, it arguably might assert invalidity in the event plaintiff subsequently were to claim, either here or in another suit, that it is entitled to royalties for a post-notification period. It is unnecessary, however, to resolve that point now.

### The Transfer Motion

█ This action concededly could have been brought in the proposed transferee forum. In consequence, determination of defendants' transfer motion depends upon the convenience of parties and witnesses and the interest of justice, considerations that are evaluated in terms of the well known factors long ago set forth by Judge Weinfeld in *Schneider v. Sears*.[15]

In this case, plaintiff is domiciled in Florida. Although she visits New York, her choice of forum in such circumstances is entitled to somewhat less weight than otherwise would be the case.

Given plaintiff's Florida domicile, Stores' Florida headquarters, and the fact that Boutiques is headquartered in Illinois, Florida clearly is a forum more convenient for the parties than New York. Indeed, all of the likely witnesses in this case reside in Florida or Illinois save for plaintiff's accountants and patent counsel, whose evidence promises to be of little or no importance and who in any case readily could travel to Florida at plaintiff's behest.

---

**13.** 112 F.3d at 1568.

**14.** *Compare* Pl. 56.1 St. ¶¶ 24–25 *with* Def. 56.1 St. ¶¶ 24–25.

**15.** 265 F.Supp. 257, 263 (S.D.N.Y.1967).

328

In all the circumstances, it seems relatively clear that this action has been brought in New York for the convenience of counsel rather than because it was more convenient for the litigants and witnesses. The interests of those companies and individuals would be served better by a trial in Florida than by one in New York. This is more than sufficient to overcome such weight as is properly accorded to plaintiff's choice of forum, given her Florida domicile, and the other factors she relies upon.

*Conclusion*

Defendants' motion to transfer this action to the Southern District of Florida for the convenience of parties and witnesses and in the interest of justice is granted. The cross-motions for summary judgment are denied in all respects save that (1) defendants' motion for summary judgment dismissing the second claim for relief, and (2) plaintiff's motion to strike defendants' third affirmative defense both are granted.

SO ORDERED.