Norberto Javier FELIX–
TORRES, Plaintiff,

v.

Harold GRAHAM, Superintendent, Auburn Correctional Facility; Joseph Bellnier, Superintendent of Security, Auburn Correctional Facility; Dawson Brown, Deputy of Administration, Auburn Correctional Facility; and Nancy Ryerson, Nurse Administrator, Auburn Correctional Facility, Defendants.

No. 9:06–CV–1090 (GTS/GHL).

United States District Court,
N.D. New York.

Oct. 23, 2009.

Norberto Javier Felix–Torres, Malone, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Krista A. Rock, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

## DECISION and ORDER

GLENN T. SUDDABY, District Judge.

Currently before the Court in this *pro se* prisoner civil rights action filed by Norberto Javier Felix–Torees ("Plaintiff") against four employees of Auburn Correctional Facility ("Defendants") are (1) Defendants' motion for summary judgment (Dkt. No. 45), (2) United States Magistrate Judge David R. Homer's Report–Recommendation recommending that Defendants' motion be granted in part and denied in part (Dkt. No. 52), and (3) Defendants' Objections to the Report–Recommendation (Dkt. No. 53). Plaintiff did not submit any objections to the Report–Recommendation. For the following reasons, the Report–Recommendation is accepted and adopted as modified; Defendants' motion for summary judgment is granted in part and denied in part; and Plaintiff's Complaint is dismissed except for his claims against Defendant Bellnier.

## I. BACKGROUND

On September 11, 2006, Plaintiff filed his Complaint in this action. (Dkt. No. 1.) Construed with the utmost liberality, Plaintiff's Complaint alleges civil rights violations under the Eighth and Fourteenth Amendments. (*Id.*) More specifically, Plaintiff alleges that Defendants (1) were deliberately indifferent to his medical needs, and (2) failed to follow New York State Department of Correctional Services' ("DOCS'") procedures with respect to double-celling and bunk placements. (*Id.*)

On January 26, 2009, Defendants filed a motion for summary judgment, arguing that (1) Plaintiff has failed to establish an Eight Amendment claim for deliberate indifference, (2) all Defendants are entitled to qualified immunity, (3) Plaintiff has failed to establish that Defendants Graham, Brown and Ryerson were personally involved in the constitutional violations alleged, and (4) Plaintiff's negligence claim is not actionable under 42 U.S.C. § 1983. (Dkt. No. 45, Part 15.)

On May 4, 2009, after being granted two extensions of time by the Court to do so, Plaintiff submitted his response in opposition to Defendants' motion. (Dkt. No. 48.) In his response, Plaintiff argues that (1) Defendants were deliberately indifferent

to his medical needs, (2) repeated acts of negligence are actionable under 42 U.S.C. § 1983, (3) Defendants violated DOCS' policy and procedure regarding bunk placements, and (4) Defendants are not entitled to qualified immunity. (Dkt. No. 48, Part 2.)

On August 14, 2009, Magistrate Judge Homer issued a Report–Recommendation recommending that Plaintiff's claims against Defendants Graham and Brown be dismissed for lack of personal involvement. (Dkt. No. 52 at 49–50.) Magistrate Judge Homer further recommended that the claims against Defendants Ryerson and Bellnier not be dismissed because, based on the current record, genuine issue of material fact exist regarding whether they were personally involved in the constitutional violation alleged. (*Id.* at 49, 51–52.) Familiarity with the specific grounds of Magistrate Judge Homer's Report–Recommendation is assumed in this Decision and Order.

On August 26, 2009, Defendants timely filed their Objections to the Report–Recommendation. (Dkt. No. 53.) Generally, in their Objections, Defendants challenge Magistrate Judge Homer's recommendation that Defendants' motion be denied with regard to Plaintiff's claims against

Defendants Ryerson and Bellnier. (Dkt. No. 53 at 4–10.)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review of Magistrate Judge Homer's Report–Recommendation

■■■■■ When specific objections are made to a magistrate judge's report-recommendation, the Court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C).[1] When only general objections are made to a magistrate judge's report-recommendation, the Court reviews the report-recommendation for clear error or manifest injustice. *See Brown v. Peters*, 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir.1999).[2] Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker*, 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition

---

1. On *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1)(C). However, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's

request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate").

2. *See also Vargas v. Keane*, 93–CV–7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec. 12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), *aff'd*, 86 F.3d 1273 (2d Cir.), *cert. denied*, 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996).

[citations omitted]. After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

### B. Standard Governing Motion for Summary Judgment

Magistrate Judge Homer correctly recited the legal standard governing a motion for summary judgment. (Dkt. No. 52, at 46–47.) As a result, these standards are incorporated by reference in this Decision and Order.

## III. ANALYSIS

As indicated above in Part I of this Decision and Order, in his Report–Recommendation, Magistrate Judge Homer concluded, *inter alia*, that, based on the current record, genuine issues of material fact exist as to (1) whether Defendant Ryerson was personally involved in the constitutional violation alleged (through, with deliberate indifference, failing to ensure a lower bunk assignment for Plaintiff), and (2) whether Defendant Bellnier was personally involved in the constitutional violation alleged (through, with deliberate indifference, neglecting to approve Plaintiff's lower bunk assignment). (*Id.* at 49, 49–52.)

In their Objections, Defendants challenge both of these conclusions. (Dkt. No. 53, at 4–10.) For example, they argue that (1) based on Plaintiff's own admission during his deposition, Defendant Ryerson was not personally involved in the constitutional violation alleged after Plaintiff fell from his bunk on December 2, 2005, and (2) it was not possible for Defendant Bellnier to remedy a wrong arising out of a single incident of which he had no advanced notice. (*Id.*)

These Objections constitute specific challenges to those portions of the Report–Recommendation recommending the denial of Defendants' motion for summary judgment with regard to Plaintiff's claims against Defendants Bellnier and Ryerson. As a result, the Court reviews these portions of the Report–Recommendation *de novo*, and reviews the remaining portions of the Report–Recommendation for clear error, for the reasons stated above in Part II.A. of this Decision and Order.

### A. Plaintiff's Claim Against Defendant Ryerson

The specific grounds in support of Magistrate Judge Homer's recommendation that the Court deny Defendants' motion with regard to Defendant Ryerson are as follows: (1) "a question of fact [exists regarding] whether Ryerson had personal knowledge of Felix–Torres' medical condition and tendency to suffer seizures and falls"; (2) a question of fact exists regarding whether Ryerson's duties involved "insur[ing] lower bunk assignments for [prisoners who demonstrate a medical need for such assignments]"; and (3) a question of fact exists regarding whether, by disregarding Plaintiff's reported medical need for a bottom bunk, Ryerson was deliberately indifferent to that medical need. (Dkt. No. 52, at 49, 50–52.)

In support of the first referenced question of fact, Magistrate Judge Homer relies on Plaintiff's sworn assertion (in an affidavit submitted in opposition to Defendants' motion for summary judgment) that, during his initial stay in the infirmary (when the medical staff monitored his condition and medication), he spoke with Ryerson about the seriousness of his diabetes and his need for a lower bunk order. (*Id.* at 49, 50 [citing Felix–Torres Affirm, at ¶ 24, attached at Dkt. No. 48, Part 3, at

5].)[3] In support of the second referenced question of fact, Magistrate Judge Homer relies on Ryerson's duties as the Auburn C.F. Nurse Administrator. (*Id.* at 49.) Finally, in support of the third referenced question of fact, Magistrate Judge Homer relies, again, on Plaintiff's sworn assertion (in an affidavit) that, during his initial stay in the infirmary (when the medical staff monitored his condition and medication about the seriousness of his diabetes), he spoke with Ryerson about his need for a lower bunk order. (*Id.* at 50 [citing Felix–Torres Affirm, at ¶¶ 17, 24, attached at Dkt. No. 48, Part 3, at 4–5].)

In their Objections, Defendants offer three arguments in response to Magistrate Judge Homer's recommendation regarding Defendant Ryerson. (Dkt. No. 53, Part 1, at 4–5.) First, argue Defendants, no admissible record evidence exists controverting Defendant Ryerson's sworn statement that she had no personal knowledge of Felix–Torres' medical condition and tendency to suffer seizures and falls, because Plaintiff's affidavit is inadmissible under the circumstances. (*Id.* at 4–5.) Second, argue Defendants, no admissible record evidence exists controverting Defendant Ryerson's sworn statement that she played no role in ensuring lower bunk assignments for prisoners who demonstrate a medical need for such assignments. (*Id.* at 4, 6.) Third, argue Defendants, because Defendant Ryerson was not sufficiently aware of Plaintiff's medical need for a bottom bunk, and because she played no role in ensuring lower bunk assignments for prisoners in need of them, she did not act with deliberate indifference to Plaintiff's medical need for a bottom bunk. (*Id.* at 4–6.)

### 1. Whether Admissible Record Evidence Exists Establishing that Defendant Ryerson Was Personally Involved in the Constitutional Violation Alleged

Defendants begin their lack-of-personal-involvement argument by arguing that Defendant Ryerson swore in her sworn affidavit (attached at Dkt. No. 45, Part 10, ¶¶ 17, 18, 24, 25) that she had no personal knowledge of Plaintiff's medical condition and tendency to suffer seizures and falls. (Dkt. No. 53, Part 1, at 4.) Defendants acknowledge that Plaintiff has sworn in his affidavit (attached at Dkt. No. 48, Part 3, at 5, ¶ 24) that, during his initial medical evaluation in November 2005, he told Defendant Ryerson about his medical need for a lower bunk. (Dkt. No. 53, Part 1, 4–5.) However, Defendants argue that Plaintiff's affidavit is inadmissible and therefore insufficient to create a genuine issue of material fact for purposes of their motion. (*Id.*) More specifically, Defendants argue that Plaintiff's affidavit is inadmissible for two reasons: (1) it contradicts his prior sworn testimony given during his deposition testimony in July 2008; and (2) he already admitted (in Paragraph 14 of his Rule 7.1 Response, attached at Dkt. No. 48, Part 1, at 2) Defendants' factual assertion that Plaintiff did not address his concerns about a top bunk assignment to Defendant Ryerson (in Paragraph 14 of their Rule 7.1 Statement). (*Id.*)

Addressing Defendant's second reason first, the Court finds that, even if the Court were to look past the fact that Plaintiff expressly "admit[s]" the truth of the facts asserted in Paragraph 14 of Defendants' Rule 7.1 Statement (*see* Dkt. No. 48, Part 1, at 2), the Court can finding nothing

---

**3.** The Court notes that Defendant Ryerson swears that she never saw or spoke with Plaintiff and was never told of his medical condition until after he fell from the upper bunk on December 2, 2005. (Dkt. No. 45, Part 10, at ¶ 25.)

in the remainder of Plaintiff's Rule 7.1 Response that successfully controverts the facts asserted in Paragraph 14 of Defendants' Rule 7.1 Statement. The closest Plaintiff comes to doing so is in Paragraph 69 of his Rule 7.1 Response, in which he states, "Plaintiff believes that he was seen by defendant Ryerson during his medical evaluation between the dates of November 02, 2005, and November 08, 2005." (Dkt. No. 48, Part 1, at 10.) The problem is that this denial is not supported by any record citation, as required by Local Rule 7.1(a)(3).[4]

■ In any event, even if (out of special solicitude to Plaintiff) the Court were con-struct a *sua sponte* review of the record in search of evidence supporting this denial, the only record evidence the Court can find is one paragraph of Plaintiff's affida-vit, in which he swears that, "during the medical evaluation during the dates of November 02, 2005 to November 08, 2005, I did speak to defendant Nancy Ryerson in her official capacity as Nurse Administra-tor of the Health Services Unit and ex-plained my need for a lower bunk due to my hypoglycemic seizures." (Dkt. No. 48, Part 3, at 5, ¶ 24.) The issue then be-comes whether the Court can disregard this affidavit testimony under the circum-stances.

■■ It is well established that issues of credibility are almost never to be re-solved by a court on a motion for summary judgment.[5] However, there is a narrow exception to this well-established rule. *Blake v. Race*, 487 F.Supp.2d 187, 202 (E.D.N.Y.2007). In *Jeffreys*, the Second Circuit explained that this narrow excep-tion is for testimony by a non-movant that

---

**4.** The Court notes that it is questionable whether Defendants' notification of January 26, 2009, sufficiently informed Plaintiff of the consequences of failing to support his Rule 7.1 denials with a specific citation to the record where the factual issue arises. (Dkt. No. 45, Part 1.) *See Cruz v. Church,* 05–CV–1067, 2008 WL 4891165, at *2–3 (N.D.N.Y. Nov. 10, 2008) (Suddaby, J.). However, the Clerk of the Court for the Northern District of New York has provided to all correctional facilities in New York State, including Plain-tiff's correctional facility at the time in ques-tion, copies of the Northern District's Local Rules of Practice, which contain an adequate notification. *See* N.D.N.Y. L.R. 7.1(a)(3). Moreover, on June 25, 2008, the Clerk's Of-fice sent Plaintiff a Northern District's *Pro Se* Handbook, which contains a notice of conse-quences and refers to Local Rule 7.1. (Dock-et Entry for 6/25/08.) *See* United States Dis-trict Court for the Northern District of New York *Pro Se* Handbook, at 41–42, http://www.nynd.uscourts.gov/documents/ProSe Handbook2008.pdf. Clearly, Plaintiff under-stood these consequences because he twice requested (and was granted) an extension of the deadline by which to respond to Defen-dants' motion, and then submitted a Rule 7.1 Response consisting of matching numbered paragraphs that often contained citations to the record. (*See* Dkt. Nos. 46–47; Dkt. No. 48, Part 1.)

**5.** *See Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 174 (2d Cir.2006) ("[C]redibility, in the ordinary course of things, is for a fact-finder to evaluate."); *Stichting v. Schreiber,* 407 F.3d 34, 55 (2d Cir.2005) ("[T]o resolve at the summary judg-ment stage, and before Mead testifies, the question of whether a reasonable jury might believe Mead would, we think, amount to a credibility determination that we are not enti-tled to make."); *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir.1996) (at the summary judgment stage, the court "is … to eschew credibility assessments"); *accord, Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir. 2004); *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir.1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."); *accord, Jef-freys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005); *see also Hayes v. N.Y. City Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir.1996) ("In applying [the summary judgment] stan-dard, the court should not weigh evidence or assess the credibility of witnesses."); *accord, U.S. v. Rem,* 38 F.3d 634, 644 (2d Cir.1994).

possesses the following two characteristics: (1) it constitutes almost the exclusive basis for a disputed issue of fact in the case (or, expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so lacking in credibility (because the testimony is incomplete and/or replete with inconsistencies and improbabilities) that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could find for the non-movant.[6]

Here, the Court finds that first requirement of the above-stated two-part test has been satisfied. The affidavit testimony in question constitutes the exclusive basis for a disputed issue of fact in the case. Indeed, it is *directly contradicted* by the following record evidence: (1) Defendant Ryerson's affidavit testimony that she had no personal knowledge of Plaintiff's medical condition and tendency to suffer seizures and falls (Dkt. No. 45, Part 10, ¶¶ 17, 18, 24, 25); (2) Plaintiff's own deposition testimony, in which he swore that he never spoke to Defendant Ryerson prior to being doubled celled at Auburn Correctional Fa-

cility, and that she never personally examined him (Dkt. No. 45, Part 14, at 21–24); (3) the affidavit testimony of Defendants Bellnier and Ryerson that, during the time period in question, Correction Counselor Lynn Anderson conducted the majority of the double-celling screening process (Dkt. No. 45, Part 10, ¶ 6; Dkt. No. 45, Part 3, ¶¶ 7–8); and (4) Plaintiff's Ambulatory Health Records from the time in question, which evidences that Plaintiff was seen by at least two separate nurses, neither of whom were Nurse Administrator Nancy Ryerson, whose signature appears elsewhere in the record (*compare* Dkt. No. 48, Part 3, at 41, 68 *with* Dkt. No. 45, Part 10, at 6 *and* Dkt. No. 48, Part 3, at 49).

Moreover, the Court finds that the second requirement of the above-stated two-part test has also been satisfied. The affidavit testimony in question is incomplete in that it neglects to state precisely on what specific date(s), and at what location, he spoke to Defendant Ryerson between "the dates of November 02, 2005 to November 08, 2005." (Dkt. No. 48, Part 3,

---

**6.** *See Jeffreys v. City of New York,* 426 F.3d 549, 554–55 (2d Cir.2005) ("[I]n the rare circumstances where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether ... there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account.... In the circumstances presented in the instant case where (1) the District Court found nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, and (2) the District Court, even after drawing all inferences in the light most favorable to the plaintiff, determined that no reasonable person could believe Jeffreys' testimony, ... we hold that the District Court did not err by awarding summary judgment. Because no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in the complaint, ... conclude that summary judgment was appropriate.") [inter-

nal quotation marks and citations omitted]; *cf. Argus, Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 42–46 (2d Cir.1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line [1] was "unsupported by documentary or other concrete evidence," and indeed was contradicted by the other record evidence, and [2] was "conclusory" and "inconsistent" with plaintiffs' present representations); *Olle v. Columbia Univ.,* 332 F.Supp.2d 599, 612–15 (S.D.N.Y.2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony [1] recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign," and [2] were inconsistent with plaintiff's other statements and claims), *aff'd,* 136 Fed.Appx. 383 (2d Cir.2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit Local Rule § 0.23).

at 5, ¶ 24.) In addition, the affidavit testimony in question is flatly inconsistent with the only other testimony Plaintiff offers on the subject-namely, his above-described deposition testimony.[7] The Court notes that, although errata sheets were provided to Plaintiff with his deposition transcript, no changes to the transcript were requested by Plaintiff. (Dkt. No. 45, Part 13, ¶ 4.) The Court notes also that, on September 19, 2008, Plaintiff verified the truth and correctness of the deposition transcript. (Dkt. No. 45, Part 14, at 27.) Finally, the Court notes that more than seven months elapsed between Plaintiff's verification of the truth and correctness of the deposition transcript on September 19, 2008, and Plaintiff's submission of inconsistent testimony on April 30, 2009. (Compare Dkt. No. 45, Part 14, at 27 with Dkt. No. 48, Part 3, at 10.)

██ "It is well-settled that a party may not defeat ... a motion [for summary judgment] by submitting an affidavit that disputes [or contradicts] his prior sworn testimony." *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir.1991) (citation omitted); *Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106, 112 (2d Cir.1998) (citation omitted). "The reason for this rule is that permitting a non-movant to oppose a motion for summary judgment in this way would 'diminish[ ] the utility of summary judgment as a procedure for screening out sham issues of fact.' " *Duttweiller v. Ea-*

*gle Janitorial, Inc.*, 05–CV–0886, 2009 WL 1606351, at *4 (N.D.N.Y. June 4, 2009) (Suddaby, J.) (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 [2d Cir.1969] ); *Hayes v. New York City Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A]n affidavit ... that, by omission or addition, contradicts the affiant's previous deposition testimony' is insufficient to create a genuine issue of fact."). "If [a][p]laintiff wish[es] to contradict h[is] own deposition testimony, the permissible procedural method [is] ... to either (1) clarify h[is] testimony on cross-examination ... pursuant to Fed.R.Civ.P. 30(c)(1), or (2) within 30 days after the deposition transcript becomes available, sign a statement listing the changes to that transcript, and the reasons for making those changes, pursuant to Fed.R.Civ.P. 30(e)(1)(B)." *Duttweiller*, 2009 WL 1606351, at *4. This rule applies even to *pro se* litigants.[8]

For all these reasons, the Court disregards Plaintiff's affidavit testimony that "during the medical evaluation during the dates of November 02, 2005 to November 08, 2005, I did speak to defendant Nancy Ryerson in her official capacity as Nurse Administrator of the Health Services Unit and explained my need for a lower bunk due to my hypoglycemic seizures." (Dkt. No. 48, Part 3, at 5, ¶ 24.)

██ Even assuming that grounds do not exist to disregard Plaintiff's late-blossoming, incredible affidavit testimony about

---

7. It is also inconsistent with Plaintiff's above-described admission to the facts asserted in Paragraph 14 of Defendants' Rule 7.1 Statement.

8. *See, e.g., Desulma v. City of New York*, 98–CV–2078, 2001 WL 798002, at *4–5 (S.D.N.Y. July 6, 2001) (enforcing Fed.R.Civ.P. 30[e] against *pro se* civil rights plaintiff), *adopted*, 98–CV–2078, Decision and Order (S.D.N.Y. filed Dec. 11, 2001); *cf. Pointdujour v. Mt. Sinai Hosp.*, 121 Fed.Appx. 895, 897 n. 2 (2d

Cir.2005) (enforcing, against *pro se* civil rights litigant, rule that "a party opposing summary judgment does not create a triable issue by denying [its] previously sworn statements"); *Shabazz v. Pico*, 994 F.Supp. 460, 469–71 (S.D.N.Y.1998) (Sotomayor, J.) (enforcing, against *pro se* civil rights litigant, rule that a party may not "create a material issue of fact by submitting ... affidavit[s] disputing his own prior sworn testimony" in order to defeat a summary judgment motion).

informing Defendant Ryerson of his medical need for a bottom bunk, the Court can find no admissible record evidence that Defendant Ryerson—the Nurse Administrator at Auburn C.F. and thus a supervisor—was personally involved in the constitutional violations alleged, in one of the five required ways described below in Part III.B. of this Decision and Order (and described by Magistrate Judge Homer in Part II.B. of his Report–Recommendation).

In their Rule 7.1 Statement, Defendants assert four facts delineating Defendant Ryerson's involvement in assignment of lower bunks for prisoners at Auburn Correctional Facility, during the time in question. More specifically, Defendants assert as follows: (1) "[Defendant Ryerson's staff was responsible for] completing the 'Health Services Review Results' section [of the inmates' Double–Cell Information Sheets] and filling out the [Screening and Physical Assessment for Placement in a Double Cell] Form"; (2) after completing the specified portion of the Double–Cell Information Sheets, Defendant Ryerson's staff "would return the Sheet to [Correction Counselor Lynn] Anderson, to be forwarded to [Deputy Superintendent of Security Bellnier]"; (3) "Anderson was not supposed to forward the Sheets to [Deputy Superintendent of Security Bellnier] for his signature until all sections of each Sheet were completed"; and (4) "[Defendant Ryerson was not] involved in determining where inmates were housed or bunked; those decisions were made by Movement and Control staff." (Dkt. No. 45, Part 2, ¶¶ 32, 33, 62, 64.) Each of these factual assertions is supported by an accurate record citation to admissible evidence. (*Id.; see also* Dkt. No. 45, Part 10, ¶¶ 12, 13, 16, 17, 18 [Ryerson Aff.]; Dkt. No. 45, Part 3, ¶¶ 12, 13 [Bellnier Aff.].)

In his Rule 7.1 Response, Plaintiff denies each of the four above-referenced facts. (Dkt. No. 48, Part 1, ¶¶ 32, 33, 62, 64.) However, Plaintiff's denial of the second and third referenced facts is not supported by citations to the record. (*Id.* ¶¶ 32, 33)[9] As a result, the second and third referenced facts are deemed admitted by Plaintiff.

Moreover, Plaintiff's denial of the first and fourth referenced facts is supported only by a citation to Paragraph 49 of his affidavit and Exhibit O to his affidavit. (*Id.* ¶¶ 62, 64.) Paragraph 49 of Plaintiff's affidavit states as follows:

> I state that I have filed this action against defendant Ryerson for supervisory liability and direct involvement, by her egregious and gross supervisory omissions in managing her subordinates, whos' [sic] deliberately indifferent action and inactions aloowed [sic] me to be unconstitutionally assigned and placed in a top bunk, resulting in my serious permanent injury.

9. Rather, in his denials, Plaintiff merely questions the existence of documentary support, or corroborating evidence, for the affidavit testimony relied on by Defendants to support of the facts asserted. Such a tactic is insufficient to create a genuine issue of material fact on a motion for summary judgment. *See Cusamano v. Sobek,* 604 F.Supp.2d 416, 453 n. 46 (N.D.N.Y.2009) (Suddaby, J. adopting as modified on other grounds report-recommendation by Lowe, M.J.) ("To create a dispute of material fact, it is not sufficient that the nonmovant merely challenge the veracity or form of one or more of the movant's supporting affidavits"); *Medina v. Hunt,* 05–CV–1460, 2008 WL 4426748, at *11–12 (N.D.N.Y. Sept. 25, 2008) (Hurd, J. adopting report-recommendation by Lowe, M.J.) (deeming claims asserted in defendant's Rule 7.1 Statement admitted where plaintiff, among other things, "merely criticizes the form or veracity of Defendants' affidavit testimony rather than citing any admissible record evidence contradicting that testimony.").

(Dkt. No. 49, Part 3, at 8–9, ¶ 49.) Such a statement, which is wholly devoid of facts based on personal knowledge regarding Defendant Ryerson's job duties, and which contains improper legal argument pursuant to Local Rule 7.1(a)(2), is insufficient to create a genuine issue of material fact on a motion for summary judgment. Exhibit O to Plaintiff's affidavit consists of a one-page policy statement issued by DOCS, setting forth medical criteria that must be satisfied by inmates requesting a lower bunk placement. (Dkt. No. 48, Part 3, at 60.) Such a policy statement, which in no way denies the authority of Movement and Control staff to make the ultimate decision regarding whether a prisoner shall receive a lower bunk placement (and which does not even mention Nurse Administrators), is immaterial to whether Defendant Ryerson possessed a duty to ensure lower bunk assignments for prisoners who demonstrate a medical need for such assignments. As a result, the first and fourth referenced facts are also deemed admitted by Plaintiff.

Based on these four admissions, the Court finds that, even if the Court were to find that some admissible record evidence exists that Defendant Ryerson had a supervisory role in assisting qualified inmates in obtaining lower bunk assignments, the Court can find no admissible record evidence that Defendant Ryerson, as a supervisor, was personally involved in the constitutional violations alleged. The Court notes that it can find no admissible record evidence that, even if Correction Counselor Anderson was one of Defendant Ryerson's "subordinates" in the medical department at Auburn Correctional Facility, Defendant Ryerson was grossly negligent in managing her. (*See* Dkt. No. 45, Part 10, ¶¶ 1 [Ryerson Aff., describing whom she supervised at Auburn C.F.].)

For all these reasons, the Court dismisses Plaintiff's Eighth Amendment claim against Defendant Ryerson for lack of personal involvement. *See Harris v. Aidala*, 03–CV–0467, 2006 WL 2583256, at *4 (W.D.N.Y. Sept. 6, 2006) ("Inasmuch as Ficchi and Piccolo were not personally involved with Harris' cell assignment, they cannot be held liable for that determination"), *aff'd*, 271 Fed.Appx. 34 (2d Cir. 2008); *Mabery v. Coughlin*, 93–CV–3221, 1996 WL 209998, at *7 (S.D.N.Y. Apr. 30, 1996) (rejecting plaintiff's claim "that defendants exhibited deliberate indifference to his medical needs by housing him in a dusty cell block which exacerbated his allergy condition [because] plaintiff has not shown that defendants were personally involved in his housing assignment ..."); *Moolenaar v. Champagne*, 03–CV–1464, 2006 WL 2795339, at *6 (N.D.N.Y. Sept. 26, 2006) (Kahn, J.) (dismissing a claim against a nurse administrator that she "should have discerned both [an inmate's] medical condition and the need for a bunk permit" based on her supervisory position is without merit because "there is no *respondeat superior* liability under section 1983"); *cf. Bennett v. Hunter*, 02–CV–1365, 2006 WL 1174309, at n. 33 (N.D.N.Y. May 1, 2006) (Scullin, S.J. & Lowe, M.J.) (collecting cases).

2. **Whether Admissible Record Evidence Exists Establishing that Defendant Ryerson Was Deliberately Indifferent to Plaintiff's Serious Medical Need for a Bottom Bunk**

In the alternative, even if the Court were to find that Defendant Ryerson was personally involved in the constitutional violation alleged, the Court can find no admissible record evidence from which a rational trier of fact could conclude that Defendant Ryerson's failure to fulfill her role in seeing that Plaintiff was assigned a

bottom bunk was anything more than carelessness or negligence.

■ Negligently failing to cause a prisoner to be assigned to a lower bunk does not satisfy the subjective element of the legal standard governing claims of deliberate indifference to a serious medical need under the Eighth Amendment. *See Goodson v. Willard Drug Treatment Campus,* 615 F.Supp.2d 100, 102 (W.D.N.Y.2009) ("[E]ven if there were sufficient evidence upon which a factfinder could reasonably conclude that defendants were negligent in assigning plaintiff to a top bunk (and I do not believe that there is), that too would be insufficient."); *Faison v. Janicki,* 03–CV–0647, 2007 WL 529310, at *2–3 (W.D.N.Y. Feb. 14, 2007) ("[E]ven assuming that Dr. Barranos's rescission of plaintiff's bottom-bunk permit amounted to a serious deprivation of his constitutional rights-which is doubtful-there is no evidence that Dr. Barranos acted with a culpable state of mind [where the plaintiff admitted in his deposition that the basis of his claim against Dr. Barranos was 'medical negligence'].");  *Connors v. Heywright,* 02–CV–9988, 2003 WL 21087886, at *3 (S.D.N.Y. May 12, 2003) (dismissing prisoner's claim that defendants were "negligent to [his] medical needs" in that they, *inter alia,* placed him in a top bunk despite the fact that he had a "mandatory lower bunk slip").[10]

■ This is because "deliberate indifference describes a state of mind more blameworthy than negligence." *Cusamano v. Sobek,* 604 F.Supp.2d 416, 494, n. 176 (N.D.N.Y.2009) (Suddaby, J., adopting Report–Recommendation of Lowe, M.J.) (collecting cases). "Rather, deliberate indifference is a state of mind akin to criminal recklessness." *Cusamano,* 604 F.Supp.2d at 494, n. 177 (collecting cases).

For this alternative reason, the Court finds that Defendant Ryerson cannot be held liable for Plaintiff's injuries, and the Court grants Defendants' motion for summary judgment with regard to Plaintiff's claim against Defendant Ryerson.

### B. Plaintiff's Claim Against Defendant Bellnier

The specific grounds in support of Magistrate Judge Homer's recommendation that the Court deny Defendants' motion with regard to Plaintiff's claim against Defendant Bellnier are as follows: (1) there is a question of fact regarding whether Defendant Bellnier's failure to ensure that the appropriate correctional facility departments were contacted for input regarding double-celling constitutes gross negligence indicative of deliberate indifference; and (2) there is a question of fact regarding whether Defendant Bellnier's failure to ensure that his subordinate's work was accurate constitutes gross negligence indicative of deliberate indifference. (Dkt. No. 52, at 52–53.)

In support of the both referenced questions of fact, Magistrate Judge Homer relies on Defendant Bellnier's sworn assertions (in an affidavit submitted in support of Defendants' motion for summary judgment) that (1) he is responsible for approving double-celling orders, (2) he delegated responsibility for investigating and prepar-

---

10. *See also Burley v. Upton,* 257 Fed.Appx. 207, 210 (11th Cir.2007) ("Even if Burley did have a 'serious medical need,' he failed to show that officials were anything more than negligent by keeping him in a top bunk for five days."); *cf. Rivera v. McKenna,* 02–CV–0244, 2004 WL 231396, at *2 (D.Conn. Feb. 5, 2004) ("The plaintiff does not allege that Warden Murphy intentionally failed to provide a means of climbing down from the top bunk or up from the bottom bunk or that he made the warden aware of the lack of a ladder in his cell prior to his fall. The allegations set forth, at most, a state law negligence claim.").

ing the double-celling orders to a subordinate who generally did "a complete and thorough job ..." (i.e., Correction Counselor Lynn Anderson), and (3) the sheer volume of papers ("hundreds of pieces of paper") he signed each week made it impossible to "personally" and thoroughly review the contents of each of the forms before approving them. (*Id.* at 55 [citing Bellnier Affirm, at ¶¶ 15–18, attached at Dkt. No. 45, Part 3, at 3–4, and Exh. B to Ryerson Aff., attached at Dkt. No. 45, Part 12, at 2].) In addition, Magistrate Judge Homer relies on Plaintiff's Double–Cell Information Sheet, which was signed by Defendant Bellnier, despite the fact that the medical unit failed to complete the "Health Services Review Results" section. (*Id.*)

In their Objections, Defendants offer six arguments in response to Magistrate Judge Homer's recommendation regarding Defendant Bellnier. (Dkt. No. 53, Part 1, at 7–10.) First, argue Defendants, Defendant Bellnier conceded only that he *once* inadvertently signed a Double–Cell Information Sheet (the "Sheet") without noticing that one of the sections had not been filled out. (*Id.* at 7–8.) Second, argue Defendants, Defendant Bellnier "knew Anderson to do a complete and thorough job in completing the Sheets." (*Id.* at 7–8.) Third, argue Defendants, Defendant Bellnier's failure to notice that the "Health Services Review Results" section of Plaintiff's Sheet was an oversight, and Plaintiff makes no allegations that any other Sheets were in any way improperly filled out or improperly approved at any point. (*Id.* at 8.) Fourth, argue Defendants, whether Defendant Bellnier has made similar omissions with respect to other inmates is not relevant, because all that is relevant for purposes of this action is whether Defendant Bellnier repeatedly took such actions with respect to Plaintiff. (*Id.* at 8.) Fifth, argue Defendants, Defendant Bellnier did

not have reason to know of facts creating a high degree of risk of physical harm to Plaintiff and did not deliberately fail to act in conscious disregard of or indifference to that risk. (*Id.* at 9–10.) Sixth, argue Defendants, by signing Plaintiff's Sheet, all Defendant Bellnier did was approve Plaintiff for double-celling; he did not direct Plaintiff's placement into a top bunk, as such decisions are made by Movement and Control staff. (*Id.* at 10.)

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Excell v. Woods,* 07–CV–0305, 2009 WL 3124424, at *20 (N.D.N.Y. Sept.29, 2009) (Suddaby, J.) [citations and internal quotation marks omitted]. "In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant." *Excell,* 2009 WL 3124424, at *20 [citation omitted]. "If the defendant is a supervisory official, such as a [deputy superintendent of a prison], a mere 'linkage' to the unlawful conduct through 'the prison chain of command' (i.e., under the doctrine of *respondeat superior* ) is insufficient to show his or her personal involvement in that unlawful conduct." *Id.* [citations omitted]. "In other words, supervisory officials may not be held liable merely because they held a position of authority." *Id.* [citation omitted]. "Rather, supervisory personnel may be considered 'personally involved' only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates

by failing to act on information indicating that the violation was occurring." *Id.* [citations omitted].

Here, Plaintiff argues that Defendants Brown, Graham, and Ryerson all engaged in a "gross omission in supervision[,]" which led to his fall from an upper bunk. (Dkt. No. 48, Part 2 at 8–16.) Plaintiff further argues that "Defendants Brown, Graham, Ryerson and Bellnier created and governed the policy and procedures used to unlawfully place [him] in a top-bunk and allowed such created policy to continue[,] which resulted in the serious permanent injury to [him]." (*Id.* at 12.)

More specifically, with regard to Defendant Bellnier, Plaintiff does not argue that he either directly participated in the action, failed to remedy a wrong after learning of the violation, or exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. (*Id.* at 8–21.) Instead, Plaintiff argues that Defendant Bellnier (1) created or allowed the policy or custom under which the incident occurred (i.e., the policy of not reviewing the content of the forms submitted by Correction Counselor Lynn Anderson before approving them), and (2) was grossly negligent in managing subordinates who caused the incident (i.e., by repeatedly failing to review the content of the forms submitted by Correction Counselor Anderson before approving them). (*Id.*)

### 1. Policy or Custom

As explained above in Part III.B. of this Decision and Order, under the third prong for supervisory negligence, supervisors may be found liable if they created or allowed the policy or custom under which the incident occurred. "A policy or custom may be inferred from acts or omissions of supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitu-

tional rights of the plaintiff." *Eng v. Coughlin,* 684 F.Supp. 56, 65 (S.D.N.Y. 1988); *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995) ("[D]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate. . . .").

Generally, a single incident involving an employee below the policymaking level will not suffice to support an inference of an official custom or policy, absent evidence tending to support, at least circumstantially, such an inference. *Cf. Davis v. County of Nassau,* 355 F.Supp.2d 668, 678 (E.D.N.Y.2005) (applying rule in context of municipal customs or policies) [internal quotation marks and citations omitted]; *see also Barad v. Comstock,* 03–CV–0736, 2004 WL 1573999, at *3 (W.D.N.Y. June 4, 2004) (dismissing supervisory liability claim against DOCS Commissioner Glenn Goord because plaintiff "failed to state (1) the manner in which the supervisory staff at GCF were improperly trained, (2) how Goord allegedly knew of the past instances of misconduct, (3) assuming awareness of the past conduct, how such awareness posed an unreasonable risk to plaintiff, (4) that Goord somehow knew of plaintiff's medical condition or (5) facts which could support a showing of 'grossly negligent' conduct.").

Here, there is record evidence that, due to fact that Defendant Bellnier had to sign hundreds of pieces of paper each week, he did not thoroughly review the contents of each of the forms submitted by Correction Counselor Anderson before approving them. (Dkt. No. 45, Part 3, at 3–4, ¶¶ 15–17, 20 [Bellnier Affirm.].) In arguing that no record evidence exists that Defendant Bellnier's custom ever before impacted an inmate the way it impacted Plaintiff, Defendants attempt to insert an injury element into the custom at issue, narrowly

defining the "custom" so that it has not been shown to be a custom at all. The Court is not persuaded that the custom in question can be so narrowly defined. Rather, the Court finds that Defendant Bellnier's "custom," for purposes of the supervisory liability standard, was merely one of incompletely reviewing the contents of the forms presented to him by Correction Counselor Anderson. That is the custom under which the incident in question occurred.

For these reasons, the Court denies Defendants' motion for summary judgment to the extent that it seeks the dismissal of Plaintiff's claim against Defendant Bellnier.

### 2. Gross Negligence in Managing Subordinate

In the interest of thoroughness, the Court will analyze Plaintiff's alternative asserted ground for supervisory liability. Under the fourth prong for supervisory negligence, supervisors may be found liable if they were grossly negligent in managing a subordinate who caused the incident. *Thompson v. New York*, 2001 WL 636432, at \*7 (S.D.N.Y. March 15, 2001). Gross negligence has been defined as "an indifference to present legal duty and utter forgetfulness of legal obligations." *Doe v. New York City Dep't of Soc. Servs.*, 649 F.2d 134, 143 n. 4 (2d Cir.1981).[11] Thus, defendants are grossly negligent when they "[have] reason to know of facts creating a high degree of risk of physical harm to another and deliberately [act] or [fail] to act in conscious disregard or indifference to that risk." *Poe v. Leonard*, 282 F.3d 123, 140 n. 14 (2d Cir.2002).

Having said that, "[s]upervisors cannot be expected to reinvent the wheel with every decision, for that is administratively unfeasible; rather, they are entitled to rely upon the decisions of their predecessors or subordinates so long as those decisions do not appear to be obviously invalid, illegal or otherwise inadequate." *Poe v. Leonard*, 282 F.3d 123, 144 (2d Cir.2002); *see also Martinez v. Simonetti*, 202 F.3d 625, 635 (2d Cir.2000) (finding that it was erroneous for the trial court to conclude that police supervisors had a duty to conduct an independent investigation before charging a suspect).

In *Poe v. Leonard*, the plaintiff sued a trooper with the Connecticut State Police ("CSP"), for videotaping her undressing at the CSP Training Center after asking her to appear in a training video. *Poe*, 282 F.3d at 125. Plaintiff also sued a captain, the trooper's former supervisor, alleging that he "violated her rights by his gross negligence or deliberate indifference in failing to adequately train, supervise, and discipline [the trooper]." *Id.* The Second Circuit concluded that the captain was "entitled to qualified immunity because the evidence that [plaintiff] asserts should have put [the captain] on notice that he needed to supervise [the trooper] more closely is insufficient as a matter of law to demonstrate that [the captain] is liable as [the trooper's] supervisor under clearly established law." *Id.* at 125. The Second Circuit based its conclusion on its finding that "[t]he facts [plaintiff] alleges are insufficient as a matter of law to have put a reasonable supervisor on notice that there was a high risk that one of his subordinates would violate another's constitu-

---

11. As stated in Part III.A. of this Decision and Order, ordinary negligence itself cannot establish a cause of action under § 1983. However, "repeated acts of negligence can be evidence of indifference." *Tylena M. v. Heartshare Children's Servs.*, 390 F.Supp.2d 296, 306 (S.D.N.Y.2005).

tional rights." *Id.* at 145.[12]

Here, unlike in *Poe v. Leonard*, the Court finds that the record contains admissible record evidence from which a rational fact finder could conclude that a reasonable supervisor would have been put on notice that there was a high risk that Plaintiff's constitutional rights would be violated, based on Correction Counselor's failure to ensure that Plaintiff's Double–Cell Information Sheet was complete. More specifically, on its face, even a cursory review of the Sheet reveals that the "Health Services Review Results" section was not completed. (Dkt. No. 45, Part 12, at 2.)[13] From this evidence, a rational fact finder could conclude that Defendant Bellnier knew and/or should have known (1) that Correction Counselor Anderson (his subordinate) failed to ensure that the Sheet was complete, and (2) that, because certain inmates approved for double-celling may need to be restricted to a bottom bunk for medical reasons, the failure to complete the form could result in Plaintiff suffering a constitutional violation.[14]

For this alternative reason, the Court denies Defendants' motion for summary judgment to the extent that it seeks the dismissal of Plaintiff's claim against Defendant Bellnier.

**C. Remainder of Plaintiff's Claims**

Neither Defendants nor Plaintiff made any specific challenge to the remainder of Magistrate Judge Homer's Report–Recommendation, which recommended that the remainder of Plaintiff's Complaint be dismissed. As a result, those portions of the Report–Recommendation are subject to only clear-error review, as explained above in Part II.A. of this Decision and Order.

After carefully reviewing all of the papers in this action, including Magistrate Judge Homer's Report–Recommendation, the Court concludes that the referenced portions of the Report–Recommendation are correct and not clearly erroneous. As a result, the referenced portions of the Report–Recommendation are accepted and adopted; Defendants' motion is granted with regard to Plaintiff's claims against Defendants Graham and Brown; and those claims are dismissed.

**ACCORDINGLY,** it is

**12.** *Cf. Perdue v. Dreyer,* 03–CV–0770, 2008 WL 4826260, at *5 (W.D.N.Y. Nov. 5, 2008) (denying defendants' motion for summary judgment with regard to plaintiff's Eighth Amendment deliberate indifference claim arising out of defendants' failure to provide plaintiff with a bottom bunk despite plaintiff possessing a permanent medical permit for a lower bunk because there were questions of fact regarding whether (1) plaintiff "informed each of the corrections officers named as defendants in this action of his medical history of seizures and showed them his medical permit for a lower bunk," and (2) "plaintiff's health care provider informed C.O. Dreyer that plaintiff was in danger of suffering a seizure and 'requested him to be moved' "); *Thomas v. New York City,* 814 F.Supp. 1139, 1151 (E.D.N.Y.1993) (holding that a supervisor's knowledge of improper conduct "may be inferred from a persistent violation of a statuto-

ry duty to inquire about the unconstitutional behavior of their subordinates and a failure to prevent the unconstitutional acts").

**13.** Moreover, as stated above Part III.B.1. of this Decision and Order, there is record evidence that Defendant Bellnier did not *thoroughly review* the contents of each of the forms submitted by Correction Counselor Anderson before approving them. (Dkt. No. 45, Part 3, at 3–4, ¶¶ 15–17, 20 [Bellnier Affirm.].)

**14.** *Cf. Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.1979) (single "brutal and premeditated" beating of inmate by group of county jail guards of varying ranks, one of whom admitted to using "show of force" to control disobedient inmates, warrants inferring policy of inadequate training or supervision).

ORDERED that Magistrate Judge Homer's Report–Recommendation is *AC-CEPTED* and *ADOPTED* as modified above; and it is further

ORDERED that Defendants' motion for summary judgment (Dkt. No. 45) is *GRANTED* with regard to Plaintiff's claims against Defendants Graham, Brown, and Ryerson. The clerk is directed to terminate these defendants; and it is further

ORDERED that Defendants' motion for summary judgment (Dkt. No. 45) is *DE-NIED* with regard to Plaintiff's claims against Defendant Bellnier.

## REPORT–RECOMMENDATION AND ORDER [1]

DAVID R. HOMER, United States Magistrate Judge.

Plaintiff pro se Norberto Javier Felix–Torres ("Felix–Torres"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, four DOCS employees, violated his constitutional rights under the Eighth and Fourteenth Amendments.[2] Compl. (Docket No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R.Civ.P. 56. Docket No. 45, 51. Felix–Torres opposes the motion. Docket No. 48. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

### I. Background

The facts are related herein in the light most favorable to Felix–Torres as the non-moving party. *See* subsection II(A) *infra.*

Felix–Torres suffered from multiple serious medical conditions including Type I diabetes for which he was insulin-dependant and prone to hypoglycemic seizures. Felix–Torres Affirm. (Docket No. 43–8) ¶¶ 5–9; Felix–Torres Dep. (Docket No. 45–14) at 9 [hereinafter "Dep."]. These seizures increased the danger of falling when assigned to an upper bunk. Felix–Torres Affirm. ¶ 14. When Felix–Torres arrived at Auburn Correctional Facility on November 1, 2005, he advised the medical staff of his diabetes and other medical conditions and of his need for assignment to a lower bunk. *Id.*[3] Felix–Torres underwent a medical screening and was designated for a single cell with a single lower bunk. Felix–Torres Affirm. ¶¶ 14, 15, 20, 21; Dep. at 10.

On November 2, 2005, Felix–Torres was transferred to the infirmary for monitoring of his blood sugar and insulin levels. Felix–Torres Affirm. ¶ 16; Docket No. 48–3 at 41. Felix–Torres remained in the infirmary for six days. Felix–Torres Affirm. ¶ 17. While in the infirmary, Felix–Torres requested a lower bunk order. *Id.* Under DOCS policy, his condition required him to have a lower bunk due to his seizures and diabetes. *Id.* ¶ 22; Docket No. 48–3 at 60. Felix–Torres spoke with defendant Ryerson, the Auburn Nurse Administrator, during the six day monitoring period and conveyed his need for a lower bunk order. Felix–Torres Affirm. ¶ 24. On November

---

1. This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2. In a prior motion to dismiss, Felix–Torres' Fourteenth Amendment claims were dismissed. Docket No. 19.

3. DOCS policy permitted assignment to a single cell for medical reasons or, if assigned to a double cell, occupy only the lower bunk. Bellnier Aff., (Docket No. 45–3) ¶¶ 6–13; Graham Aff, (Docket No. 45–8) ¶ 7; Brown Aff, (Docket No. 45–7) ¶ 8; Ryerson Aff, (Docket No. 45–10) ¶¶ 5–13.

8, 2005, Felix–Torres was discharged from the infirmary and returned to his cell with the single, lower bunk. *Id.* ¶ 18.

At an administrative screening of Felix–Torres' records, Felix–Torres was recommended for double-celling. Bellnier Aff. ¶ 17 & Ex. B; Docket No. 48–3 at 72. However, the DOCS employee responsible for completing the screening, a non-party here, neglected to obtain the review of the medical staff. *Id.* A review by the medical staff would have confirmed that Felix–Torres was diabetic and that, if double-celled, he should have been restricted to a lower bunk. Bellnier Aff. ¶ 25 & Ex. C; Felix–Torres Affirm. ¶ 46. On December 2, 2005, Felix–Torres was re-assigned to a double-cell shared with another inmate. Felix–Torres Affirm. ¶ 25; Dep. at 10; Docket No. 45–5 at 2; Docket No. 48–3 at 42.

After being informed of his impending move, Felix–Torres pleaded with two unknown corrections officers and an unknown sergeant to be assigned the lower bunk due to his medical conditions and attendant seizures. Felix–Torres Affirm. ¶¶ 25–34; Dep. at 11–15. His requests were summarily dismissed. Felix–Torres Affirm. ¶¶ 25–34.[4] On December 2, 2005, his first night in the upper bunk, Felix–Torres fell to the floor from the upper bunk while sleeping, suffering a dislocated shoulder and injuries to his head. Grievance (Docket No. 45–6) at 2; Felix–Torres Affirm. ¶¶ 36–39; Depo. at 15–18; Docket No. 48–3 at 44–45. Felix–Torres was

treated at an outside hospital. Grievance at 2; Depo. at 16.

Upon his return to Auburn, Felix–Torres spent the next six days at the facility infirmary. Felix–Torres Affirm. ¶ 42; Docket No. 48–3 at 46. On December 8, 2005, Felix–Torres was discharged from the infirmary and again assigned to the upper bunk in the same cell where the fall occurred. Felix–Torres Affirm. ¶ 44; Docket No. 48–3 at 43–49. Felix–Torres was granted a lower bunk restriction effective December 12, 2005.[5] Bellnier Aff. ¶ 22 & Ex. C; Felix–Torres Affirm. ¶ 45; Docket No. 48–3 at 43; Docket No. 45–6 at 11. This action followed.

## II. Discussion

In his complaint, Felix–Torres alleges that defendants violated his Eighth Amendment rights[6] by assigning him to an upper bunk despite his medical condition. Defendants move for summary judgment on the grounds that (1) Felix–Torres has failed to allege the personal involvement of any defendant, (2) there is no merit to his claim, and (3) defendants are entitled to qualified immunity.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which

---

4. The John Doe defendants are no longer parties to the present case as they were dismissed in an order filed October 17, 2007, 521 F.Supp.2d 157 (N.D.N.Y.2007). Docket No. 19.

5. Defendant Graham claims that this lower bunk order was effective on December 2, 2005. Graham Aff. (Docket No. 45–8) ¶ 13.

This appears to be a typographical error, or a conflict concerning the facts because records indicate that the order was effective on December 12, 2005. Bellnier Aff. ¶ 22 & Ex. C; Felix–Torres Affirm. ¶ 45; Docket No. 48–3 at 43; Docket No. 45–6 at 11.

6. *See* note 2 *supra.*

**60**

support the motion. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006); *see also Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se,* . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).. However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505.

**B. Personal Involvement**

◼ Defendants contend that Felix-Torres has failed to establish the personal involvement of any defendant. "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. *Id.; Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). However, supervisory personnel may be considered "personally involved" if:

(1) [T]he defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent[7] in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

7. Both gross negligence and recklessness, connote a "kind of conduct where the defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk." *Poe,* 282 F.3d at 140 n. 14 (internal quotation marks and citation omitted).

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)).

▪ Felix–Torres alleges that defendants Brown, Graham, and Ryerson all engaged in a "gross omission in supervision ..." which led to his fall from an upper bunk. *See* Pl. Mem. of Law (Docket No. 48–2) at 8–17. Personal involvement is established when a supervisor "fail[s] to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and h[is] injury." *Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir.2002) (citations omitted); *see also Villante v. Dep't of Corr. of City of New York,* 786 F.2d 516, 519 (2d Cir.1986) (citations omitted) (holding that a failure to "supervise sufficiently egregious to amount to gross negligence or deliberate indifference ...." suffices to allege personal involvement); *Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.1979) ("While some causal link must be made between the [defendants'] failure to train and the violation of constitutional rights, a single brutal incident ... may be sufficient to suggest that link."). Thus, defendants "may be found liable if, in supervising [the correctional and medical staff, they] exhibited gross negligence or deliberate indifference to a high risk that [staff] would violate [Felix–Torres'] constitutional rights, and [defendants'] neglect cause [staff] to violate [Felix–Torres'] rights." *Poe,* 282 F.3d at 140.

▪ Additionally, supervisors may be held liable for failing to inquire into a subordinate's actions based on actual or constructive knowledge of his or her work.

*Poe,* 282 F.3d at 141 (citations omitted). Thus, courts must determine "whether [defendants] knew or should have known that there was a high degree of risk that [staff] would behave inappropriately ..., but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary ..., and that failure caused a constitutional injury ...." *Id.* at 142 (citations omitted). Imputed knowledge has been upheld where an official failed "to ensure plaintiff's constitutional rights with a lack of duty on his part ...." *Id.* at 143–44 (internal quotation marks and citation omitted).

### 1. Brown [8]

▪ A position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. Thus, Brown, the Auburn Deputy Superintendent of Administration, cannot be held liable solely because he held a supervisory positions over other corrections officials.

Felix–Torres does not contend that Brown was directly involved with the alleged constitutional violations. In fact, Felix–Torres testified that he never communicated with Graham, orally or in writing. Dep. at 20. Additionally, no evidence has been proffered that Brown had any knowledge that Felix–Torres was not a medically appropriate candidate for assignment to an upper bunk in contravention of DOCS policy. Brown Aff. (Docket No. 45–7) ¶¶ 11–12. Brown was not responsible for reviewing any forms associated with the double-celling practice nor the cells or bunks to which inmates were assigned. *Id.* ¶¶ 9–10.

**8.** After the fall, Felix–Torres spent a week in the infirmary and was discharged back to an upper bunk for another three days. There is no evidence that Felix–Torres suffered any additional injury or exacerbated his previous injuries in this period.

Thus, the record on this motion as to Brown demonstrates without contradiction that Brown bore overall responsibility for the procedures which led to Felix–Torres' assignment to an upper bunk. However, Brown never communicated with Felix–Torres, either directly or in writing, and was never advised of Felix–Torres request for assignment to a lower bunk or of the medical conditions which supported that request. There is no evidence that the procedures for assigning inmates to lower or upper bunks was defective or that, if defective, Brown was ever notified of the defects. Brown was, therefore, not involved in the decision to assign Felix–Torres to an upper bunk and had no reason to know of that decision.

■ Any claim against Brown thus rests on whether there is evidence that Brown's supervision of others was grossly negligent. As discussed *infra*, there remain questions of fact as to the liability of certain of Brown's subordinates. However, the mere fact that a subordinate may have deprived an inmate of a constitutional right, without more, will not support a claim against that subordinate's supervisor. *See Black*, 76 F.3d at 74. Such additional evidence might include, for example, proof that Brown had prior knowledge of other instances in which subordinates had acted wrongfully in a similar manner or that he had direct knowledge of the misconduct in Felix–Torres' case. No such evidence has been proffered here. Accordingly, Felix–Torres has failed to raise a question of fact as to Brown's liability and defendants' motion as to Brown on this ground should be granted.

## 2. Ryerson

Ryerson asserts that she never saw or spoke with Felix–Torres and was never told of Felix–Torres' medical condition until after he fell from the upper bunk on December 2, 2005. Ryerson Aff. (Docket No. 45–10) ¶ 25. Felix–Torres asserts that he spoke with Ryerson during his initial stay in the infirmary when the medical staff monitored his condition and medication about the seriousness of his diabetes and his need for a lower bunk order. Felix–Torres Affirm. ¶ 24. Construing the facts in the light most favorable to Felix–Torres, this conflict suffices to create a question of fact whether Ryerson had personal knowledge of Felix–Torres' medical condition and tendency to suffer seizures and falls. Whether Felix–Torres so advised Ryerson is material to, *inter alia*, whether Ryerson acted with deliberate indifference in failing to insure a lower bunk assignment for Felix–Torres. Given Felix–Torres' assertion and Ryerson's duties, this conflict suffices to defeat Ryerson's motion for summary judgment and requires a determination of the credibility of the conflicting statements.

Accordingly, defendants' motion as to Ryerson should be denied.

## 3. Graham

■ Graham presided over Felix–Torres' grievance hearing. Graham affirmed the findings of an investigation conducted by an unnamed corrections officer that Felix–Torres had already been moved to a lower bunk and his grievance was resolved as moot. Graham Aff. (Docket No. 45–8) ¶ 14 & Ex. A. This is insufficient to establish personal involvement as there exists no evidence in the record that Graham did any more than affirm that Felix–Torres had been assigned a lower bunk. Felix–Torres has failed to demonstrate how Graham's actions in any way caused or continued the upper bunk assignment that led to his injuries. Even if Felix–Torres named Graham as a defendant because of Graham's position of authority, this cannot establish the requisite personal involvement. There are no allegations that Gra-

ham was present, or had any knowledge, of the alleged constitutional violations.

■ While Felix–Torres alleges that Graham was grossly negligent in his supervision of all other named defendants as Superintendent, no evidence has been proffered as to how Graham was negligent in this respect or that he should have known that his subordinates or procedures he instituted or oversaw were deficient. No evidence exists that Graham had actual or constructive knowledge of any facts from which Graham should have concluded that Felix–Torres was being deprived of a constitutional right. Graham was unaware of Felix–Torres' diabetes, assignment to an upper bunk, or fall until after the fact, by which time staff had resolved all of the aforementioned issues. Thus, there is no evidence that Graham was a causal link between any actions of the corrections or medical staff and the alleged constitutional violations.

Accordingly, defendants' motion as to Graham on this ground should be granted.

### C. Eighth Amendment

■ The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition extends to the provision of medical care and inmate safety. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. *Id.* "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm

ultimately was not averted." *Id.* at 844, 114 S.Ct. 1970.

■ A prisoner must first show serious illness or injury to state a cognizable claim. *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir.2003) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir.2003) (*citing Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). Defendants do not dispute that Felix–Torres' injuries from the fall at least raise questions of fact on the first prong. However, defendants contend that there is no evidence of deliberate indifference to Felix–Torres' medical condition.

■ Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." *Chance*, 143 F.3d at 702. Thus, prison officials must intentionally deny treatment or accommodations for medical conditions or intentionally interfering with treatment once prescribed. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. *Chance*, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists ... are not adequate grounds for a section 1983 claim." *Sonds v. St. Barna-*

bas Hosp. Corr. Health Servs., 151 F.Supp.2d 303, 312 (S.D.N.Y.2001).

In the context of Eighth Amendment claims concerning assignments to upper rather than lower bunks, courts have consistently found that where the gravamen of the claim is that an inmate was improperly denied an order for a lower bunk assignment, this constitutes at most a disagreement over the appropriate treatment, fails to demonstrate deliberate indifference, and is insufficient to withstand a motion for summary judgment. *See Goodson v. Willard Drug Treatment Campus,* 615 F.Supp.2d 100, 101–02 (W.D.N.Y.2009) (gathering cases). However, where there was in place a medical order that an inmate be assigned to a lower bunk, that order was known to the defendants, and the inmate was thereafter assigned to an upper bunk resulting in an injury to the inmate, the evidence suffices to raise a question of fact on the second prong of the claim. *See Perdue v. Dreyer,* No. 03–CV–770Sr., 2008 WL 4826260, at *5–6 (W.D.N.Y. Nov. 5, 2008).

There is no dispute here that Felix–Torres' medical condition required that he be assigned to a lower bunk. Thus, the issue presented is whether Felix–Torres has presented sufficient evidence to raise a question of fact whether defendants knew of his need for assignment to a lower bunk and disregarded that need. Felix–Torres asserts that over the six-day period when he was confined to the infirmary to monitor his medical condition before assignment to a cell, told Ryerson that his diabetes and hypoglycemic seizures required his assignment to a lower bunk. Felix–Torres Affirm. ¶¶ 17, 24. Thus, viewing the evidence in the light most favorable to Felix–Torres, he suffered a medical condition which required he be assigned a lower bunk, the need for the lower bunk order was reported to Ryerson, and Ryerson

disregarded Felix–Torres' need for a lower bunk assignment leading to his fall and injuries. This evidence suffices to raise a question of fact as to the contention that Ryerson was deliberately indifferent and to defeat her motion for summary judgment on this ground. *See Perdue,* 2008 WL 4826260, at *5.

Moreover, Auburn's double-celling screening procedure relied on multiple departments and parties collaborating to come to a final decision. In this case, the medical department was omitted from the decision whether Felix–Torres was appropriate for double-celling and, if so, whether he required a lower bunk order. Bellnier Aff. ¶ 17 & Ex. B. However, thirty days prior, the medical department was aware that Felix–Torres was diabetic, insulin-dependent, and susceptible to hypoglycemic seizures. Therefore, Felix–Torres met medical criteria for a lower bunk placement. Docket No. 48–3 at 60. The medical department's failure to issue a lower bunk order after acquiring direct knowledge of Felix–Torres' need for such an order constitutes evidence of intentional disregard for Felix–Torres' health and safety.

Defendants claim that this omission was merely an oversight and was, at worst, a negligent mistake which is insufficient to demonstrate deliberate indifferences. *Estelle,* 429 U.S. at 105–106, 97 S.Ct. 285 (noting that "an inadvertent failure to provide adequate medical care [is insufficient to sustain a constitutional claim because] ... negligen[ce] in ... diagnosing or treating a medical condition does not state a valid claim...."). Defendants also claim that once the mistake was brought to the attention of the medical staff, it was immediately rectified and Felix–Torres was issued a permanent lower bunk order. These contentions are not fully supported by the record, however, as following his

fall, Felix–Torres was actually discharged back to an upper bunk for an additional three days. This failure to correct a health hazard immediately is indicative of intentional delay and deliberate indifference.

Additionally, Bellnier claims that he accidentally omitted the medical department which was merely negligent and inadvertent. Bellnier was responsible for approving double-celling orders. Bellnier Aff. ¶ 18. Bellnier claims to have delegated responsibility for investigating and preparing the double-celling orders to a subordinate, a non-party, who generally did "a complete and thorough job. . . ." *Id.* ¶¶ 15–16. Despite her competence, this subordinate failed properly to forward the double-celling review to the medical department where a simple records review would have shown that Felix–Torres was undeniably required to have a lower bunk order. Bellnier received this incomplete review which showed no review by the medical department and signed it either without reading it or without returning it for medical department review.

Bellnier alleges that the sheer volume of papers he signed in a week made it impossible to review the content of the forms before approving them. Bellnier Aff. ¶ 16. This failure to read what he approved, however, may constitute more than mere negligence. Reading a form prior to signing it did not require Bellnier to conduct a second independent investigation into the appropriateness of the double-celling order. Rather, it ensured that an investigation and review were conducted as evidenced by having all sections of the double-celling screening form completed. By signing forms without reading them, Bellnier arguable abdicated his assigned responsibilities to a subordinate, a decision which could reasonably be found to constitute grossly negligent and reckless conduct.

Finally, while "ordinary negligence by itself could not establish a cause of action under Section 1983, repeated acts of negligence can be evidence of indifference" amounting to gross negligence.[9] *Tylena M. v. Heartshare Children's Servs.,* 390 F.Supp.2d 296, 302 (S.D.N.Y.2005) (internal quotation marks and citations omitted). Gross negligence is defined as "an indifference to present legal duty and utter forgetfulness of legal obligations. . . ." *Doe v. New York City Dep't of Soc. Servs.,* 649 F.2d 134, 143 n. 4 (2d Cir.1981). Bellnier's acknowledged practice of failing to insure that (1) the appropriate departments were contacted for input and (2) the accuracy of the subordinate's work was checked may constitute repeated acts of negligence. Construing the evidence in the light most favorable to Felix–Torres, these omissions also constitute evidence of gross negligence indicative of deliberate indifference. Thus, a question of fact remains as to whether Bellnier and Ryerson were deliberately indifferent to Felix–Torres' serious medical needs.

Accordingly, defendants' motion on this ground should be denied as to Bellnier and Ryerson.

### D. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitu-

---

9. While frequently used synonymously, a distinction exists between gross negligence and deliberate indifference. *Doe v. New York City Dep't of Soc. Serv.,* 649 F.2d 134, 143 (2d Cir.1981) (citations omitted). Gross negligence describes "a type of conduct" while deliberate indifference describes "a state of mind." *Id.*

tional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Aiken v. Nixon,* 236 F.Supp.2d 211, 229–30 (N.D.N.Y.2002) (McAvoy, J.), *aff'd,* 80 Fed.Appx. 146 (2d Cir.2003). However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the ... official to believe that his [or her] acts did not violate those rights." *Smith v. City of Albany,* No. 03–CV–1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir. 1991); *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990) (internal citations omitted)).

■■ A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. *Aiken,* 236 F.Supp.2d at 230. Here, as discussed *supra,* Felix–Torres has demonstrated a deprivation of his Eighth Amendment right by Bellnier and Ryerson when the evidence is viewed in the light most favorable to Felix–Torres. It must then be determined whether the right in question was clearly established at the time of the violation.

It has long been held that the Eighth Amendment "requires that inmates be furnished with ... reasonable safety [and i]t is cruel and unusual punishment to hold convicted criminals in unsafe conditions." *Helling v. McKinney,* 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (internal quotation marks and citations omitted).

Thus, the Eighth Amendment right which Felix–Torres contends was violated by the actions of Bellnier and Ryerson was clearly established in November and December, 2005 when the events at issue herein transpired.

Accordingly, it is recommended that defendants' motion on this ground as to Bellnier and Ryerson be denied.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Docket No. 45) be:

1. **GRANTED** as to defendants Graham and Brown; and

2. **DENIED** as to defendants Bellnier and Ryerson.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72, 6(a), 6(e).